No. 467.

## Hanna v. The Island Coal Company.

Attorney and Client.—*Lien for Services and Money Expended.—Right of Client to Settle Claim Before Judgment.*—An attorney who institutes an action to recover damages alleged to have been sustained by his client can not, before judgment, acquire a lien for his fees and money expended. The client has the right at any time before judgment to release the cause of action without the consent of the attorney. The fact

that the defendant in the action for damages made a settlement with the plaintiff after notice from the attorney of the amount due him from his client for legal services, and money expended, and the further fact of the insolvency of the client, would in nowise render said defendant liable to the attorney. Section 5276, R. S. 1881, only applies to the acquirement of a lien by an attorney after the rendition of judgment.

SAME.—*Fraudulent Collusion Between Client and Defendant.—Insufficiency of Averment as to.*—To charge fraudulent collusion between the plaintiff and the defendant in the damage suit in nowise aids the appellant. Where the plaintiff compromised his claim he did what he had the lawful right to do, and the attorney having acquired no lien upon or interest in such cause of action, no obligation in his favor was created by the transaction against said defendant. Characterizing a transaction as fraudulent does not make it so in law, unless it is so in fact.

From the Greene Circuit Court.

*J. S. Bays*, for appellant.

*A. G. Cavins*, *E. H. Cavins* and *W. L. Cavins*, for appellee.

Fox, J.—This was an action commenced in the Greene Circuit Court by the appellant against the appellee to recover the amount of an attorney's fee for which the appellant claims the appellee was liable. The complaint filed was in two paragraphs. The court below sustained a demurrer to each paragraph. The appellant took proper exceptions to the ruling of the court, and refused to amend either paragraph of his complaint, whereupon the court gave judgment upon the demurrer in favor of the appellee.

The material allegations in the first paragraph were in substance as follows: That at the times mentioned in the complaint the appellant was an attorney at law, and being so, one Charles Stark employed him to bring a suit in the Greene Circuit Court against the appellee for five thousand dollars for personal injuries received by him in the appellee's coal mines by reason of the negligence of the appellee, " and to properly conduct the same to a final determination "; that the appellant, as such attorney, did commence such action " and spent much time and labor in preparing said suit

for trial * * * and in employing assistance in said cause and paying the expenses thereof," and that by reason thereof the said Stark became indebted to him. It is then averred that the appellee, well knowing these facts, after the said suit had been commenced, and before trial, compromised and settled the cause of action with the said Stark without the knowledge or consent of the appellant, and paid him a sum of money unknown to the appellant, thus causing the suit to be dismissed; that before the said compromise was made the appellant gave notice in writing to the appellee of his rights in the premises, and that the amount due him for his services, and for the money he had expended, was unpaid. It is also alleged that at the time the notice was given and at the time the compromise was made the said Stark was insolvent, which fact was known to the appellee.

The second paragraph of the complaint is substantially the same as the first, with the exception that it charges that at the time the compromise was made, the appellee, well knowing that the said Stark was insolvent, entered into a collusion with him for the fraudulent purpose of cheating the appellant " out of his lien for his services and expenses in said cause, and for the fraudulent purpose of cheating him out of his fees for such services and expenses," compromised and settled said cause for a sum of money unknown to the appellant, and caused the same to be dismissed, whereby " the said fee and lien " were lost to the appellant.

It thus appears that the only question submitted for the consideration of this court, is the action of the court below in sustaining a demurrer to each of the paragraphs of the complaint.

It is alleged in the complaint, and admitted by the demurrer, that the appellant made a valid contract with the said Stark to perform services for him in bringing an action against the appellee for personal injuries received by him resulting from the appellee's negligence. As to what the facts were constituting the cause of action that Stark claimed to

have against the appellee we are not informed.    The complaint simply informs us that the appellant was employed to bring suit against the appellee " for personal injuries received by said Stark," through the negligence of the appellee.    It sufficiently appears, however, from the allegations of the complaint, that the appellant had a valid claim against Stark for services rendered.

There is no allegation that any money was expended by the appellant at the request of Stark, but, conceding that the appellant had the right to recover from Stark the money expended by him, as well as for the services rendered, the question is, do the facts stated make a cause of action against the appellee ?

The only statutory method of obtaining a lien by an attorney against his client is in this State given by section 5276, R. S. 1881, and this is only " on any judgment rendered in favor of any person or persons employing such attorney, to obtain the same."    The lien provided for in this statute can only be had in the manner prescribed, after a judgment is rendered.

In this case, the cause of action, whatever it was, was compromised before judgment, therefore the statute has no application.    Under some circumstances, an attorney may hold a lien for fees and costs without the aid of the statute above mentioned.

In *Puett* v. *Beard,* 86 Ind. 172, the following statement is made : " It is generally agreed, both here and in England, that a solicitor has a lien for his costs upon a fund recovered by his aid, paramount to that of the persons interested in the fund or those claiming as their creditors.    * *  The reason for this rule is that the services of the solicitor have, in a certain sense, created the fund, and he ought in good conscience to be protected."    This language is quoted with approval in the case of *Justice* v. *Justice,* 115 Ind. 201.    See, also, *Andrews* v. *Morse,* 12 Conn. 444 ; *Stratton* v. *Hussey,* 62 Me. 286 ; *Boyle* v. *Boyle,* 106 N. Y. 654.    In *Justice* v. *Jus-*

*tice, supra,* it was decided that an attorney who, by his services, has procured a will to be set aside, and established his client's right to share in the estate of the testator, acquires an equitable lien for his fees upon the funds so secured to his client, and is entitled to priority of payment over a judgment creditor of the latter whose lien attached after the contract for such professional services was entered into.

In the case of *Courtney* v. *McGavock,* 23 Wis. 619, the court draws a distinction between an action for unliquidated damages and one upon a negotiable instrument or written contract. In the former case the court says the attorney has no lien upon the cause of action before judgment; in the latter, " the lien attaches before judgment, from the moment the defendant has notice of the employment of the attorney, or from the commencement of the action; and any settlement made by the parties without discharging the fees of the attorney, is deemed as to him so far fraudulent and void."

Ordinarily, however, an attorney acquires no lien for fees until after judgment; therefore, until after judgment, the client may settle and compromise and release the cause of action in any manner he pleases without consulting his attorney, and the attorney has no power to prevent it. *Simmons* v. *Almy,* 103 Mass. 33; *Parker* v. *Blighton,* 32 Mich. 266; *Pulver* v. *Harris,* 52 N. Y. 73; *Roberts* v. *Doty,* 31 Hun 128; *Connor* v. *Boyd,* 73 Ala. 385; *Swanston* v. *Morning Star Mining Co.,* 13 Fed. Rep. 215; *Young* v. *Dearborn,* 27 N. H. 324. In such a case a lien can not be acquired before judgment, even by agreement between the attorney and client that will prevent the client from compromising and releasing the cause of action without the consent of the attorney, although the defendant may have notice of the agreement. *Coughlin* v. *New York, etc., R. R. Co.,* 71 N. Y. 443; *Kusterer* v. *City of Beaver Dam,* 56 Wis. 471; *Pulver* v. *Harris, supra.* If the cause of action is one for unliquidated damages, and is not assignable, the client can not give his at-

torney any lien upon it that will prevent a settlement or compromise by the parties before judgment, even if the amount is definitely fixed and an agreement made that the same shall become a lien and the adverse party notified of the fact. Jones Liens, sections 206, 207. Actions for slander and libel, assault and battery, personal injuries, resulting from the negligent conduct of others, are within the rule.

In the second paragraph of the complaint it is charged that the appellee entered into a fraudulent collusion with Stark and compromised and settled the cause of action with him, knowing him to be insolvent, for the purpose of cheating the appellant " out of his fees " and " out of his lien for services and expenses." There is no allegation in the complaint that there was any agreement between Stark and the appellant as to the amount appellant was to receive, or that he was to have a lien on the subject of the action. We have only the general statement that the appellant " was employed as an attorney to bring a suit in the Greene Circuit Court against the defendant for five thousand dollars damages for personal injuries " caused by the negligence of the appellee. It is not averred in either paragraph of the complaint that Stark had a meritorious cause of action against the appellant. It is apparent that the cause of action was not assignable, and was for unliquidated damages. Under section 282, R. S. 1881, it would not have survived the death of Stark, but would have died with him. It is clear that under the authorities the appellant did not, and could not, acquire a lien upon the cause of action claimed by Stark before judgment. If no lien existed, then there was none to divest by any collusion that Stark and the appellee might enter into. Stark had the right to compromise or release his claim at any time before judgment without the consent of his attorneys. If he had this right and exercised it, and in doing so discharged no lien acquired by the appellant, then the appellant suffered no injury that would give him a cause

of action against the appellee. Of course his right to proceed against Stark would remain unimpaired.

The charge of fraudulent collusion in the second paragraph of the complaint in nowise aids the appellant. Characterizing a transaction as fraudulent does not make it so in law unless it is so in fact; therefore, when the appellant charged that the appellee was guilty of a fraudulent collusion for the purpose of cheating him "out of his fees and expenses" it was incumbent upon him to state facts sufficient to support the charge. *Conant* v. *National, etc., Bank*, 121 Ind. 323; *Bodkin* v. *Merit*, 102 Ind. 293; *Joest* v. *Williams*, 42 Ind. 565; *Ham* v. *Greve*, 34 Ind. 18.

When Stark compromised his claim with the appellee and dismissed the action without the consent of his attorney, he did what he had the lawful right to do. The contract to bring the action was made with Stark by the appellant. The appellee had nothing to do with it. Stark was the owner of the cause of action, and as such, under the circumstances, had the absolute control of it until it passed into a judgment. Having settled and compromised it before judgment, the appellee was released. The appellant, having acquired no lien upon or interest in such cause of action, no obligation in his favor was created by the transaction against the appellee.

The judgment is affirmed, with costs.

Filed Sept. 27, 1892.