In re Maryann EDL, Debtor.

Maryann EDL, Plaintiff,

v.

Frank KINAST, Defendant.

Bankruptcy No. 96–31040–7.
Adversary No. 96–3087–7.

United States Bankruptcy Court,
W.D. Wisconsin.

April 1, 1997.

## MEMORANDUM DECISION

**ROBERT D. MARTIN**, Chief Judge.

Attorney Frank Kinast represented Maryann Edl in her divorce. They had no written fee agreement, but he asked that she pay him a retainer of $600 and thereafter $100 per hour. After receiving the retainer Mr. Kinast did not bill her, nor did Ms. Edl pay anything until the divorce was granted. On November 3, 1995, after a contested hearing, Mr. Kinast secured for Ms. Edl a property division judgment of $3,400. The judgment was satisfied on February 18, 1996 by a check which Mr. Kinast had his opposing counsel make payable in both his name and Ms. Edl's. He held the check until she came to his office on February 21, 1996. She left that day refusing to sign the check and demanding that she receive its entire amount. She offered to pay Mr. Kinast $100 per month in the future but declined to pay the

entire bill then due. The next day, Ms. Edl returned to Mr. Kinast's office, grudgingly endorsed the check and accepted a check for $1,740 (the divorce proceeds minus $1,660 in attorney's fees). Ms. Edl filed this bankruptcy 25 days thereafter.

The trustee decided not to pursue a preference action against Mr. Kinast. However, Ms. Edl moved to avoid any lien that may exist in the divorce proceeds under 11 U.S.C. § 522(h)[1] and (g)(1) and to recover the fees as a preference under § 547(b).[2] In response, Mr. Kinast claims he had a common-law, possessory attorney's lien for the fees and received no preference.

■ Before trial, the issues were narrowed to (1) whether Ms. Edl voluntarily transferred part of her divorce proceeds to Mr. Kinast in payment of his fees; and (2) whether Mr. Kinast had a lien in the divorce proceeds. At trial, the parties focused on the "voluntariness" of Ms. Edl endorsing the property settlement check and accepting her share less the attorney's fees. However, the transfer which gave Mr. Kinast a preference, if there is one, was made when the check was made payable to him. It was that transfer which enforced the alleged attorney's lien. I found that transfer to be involuntary because there was no prior agreement to create a

---

1.  11 U.S.C. § 522(h) provides:

    The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

        (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

        (2) the trustee does not attempt to avoid such transfer.

    § 522(g)(1) provides:

    Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

        (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

        (B) the debtor did not conceal such property; or

    (2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

2.  11 U.S.C. § 547(b) provides:

    Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

        (1) to or for the benefit of a creditor;

        (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

        (3) made while the debtor was insolvent;

        (4) made—

        (A) on or within 90 days before the date of the filing of the petition; ...

        (5) that enables such creditor to receive more than such creditor would receive if—

        (A) the case were a case under chapter 7 of this title;

        (B) the transfer had not been made; and

        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

lien. The issue remaining is whether a lien existed in the absence of an agreement.

Ms. Edl stands in the shoes of a trustee in bankruptcy pursuant to § 522(h) and (g)(1) and may avoid any transfer meeting the five requirements of § 547(b). All elements of § 547(b) have been admitted except those under § 547(b)(5) which provides:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>
> > (5) that enables such creditor to receive more than such creditor would receive if—
> >
> > > (A) the case were a case under chapter 7 of this title;
> > >
> > > (B) the transfer had not been made; and
> > >
> > > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

If Mr. Kinast lacked an enforceable attorney's lien in the divorce proceeds, he received more than other unsecured creditors. However, if he had a lien, general creditors would have had no right to share in the amount he received, and no preference would be established.

Whether an attorney's lien can exist in the divorce proceeds is an issue of state law. Wisconsin courts recognize three types of attorney's liens. *Matter of Richland Bldg. Systems, Inc.*, 40 B.R. 156 (Bankr.W.D.Wis. 1984). The first, statutory attorney's liens, exist only by agreement between attorney and client and can only attach to funds awarded in a tort or contract case. The second type is a retaining lien on clients' papers. The third type is an equitable lien. It is only this third type that Attorney Kinast alleges he had.

The equitable lien, or "charging lien," arises from the common law. It attaches to the proceeds of a judgment decree or award obtained by the attorney for her client. Like the statutory lien, it is upheld on the theory that the attorney's services and skills created the fund. James T. Flaherty, *Attorney Liens and The Code of Professional Responsibility*, 14 J. of Legal Prof. 137, 139 (1989). Wisconsin codified an attorney's lien in 1891, and for a long time after 1900 Wisconsin cases considered only liens meeting the statutory definition. However, in 1966 the Wisconsin Supreme Court gave life to the old common law equitable lien in *Wurtzinger v. Jacobs*, 33 Wis.2d 703, 148 N.W.2d 86 (1966), when it found that an attorney's lien could exist even if there was no written agreement. This court followed *Wurtzinger* in *Matter of Richland*, *supra* at 158, reiterating that the equitable lien is a remedy where the statutory attorney's lien is inapplicable:

> The equitable lien appears more broadly to be a remedy to prevent unjust enrichment to a client whose attorney has performed well and secured a judgment. . . . Equity may thus allow a lawyer to have a lien for some or all of the services and disbursements leading to the recovery without regard to the terms of the fee agreement when such a lien is necessary to prevent unjust enrichment of the client.

Were there no other requirements, it would seem Mr. Kinast could claim an equitable attorney's lien to prevent the "unjust enrichment" of his client. Mr. Kinast worked to get a divorce settlement for Ms. Edl and unless allowed to have a lien in the divorce proceeds will get nothing but the business end of the injunction enforcing the discharge in her "no-asset" bankruptcy.

However, under Wisconsin law it is an open question whether any type of attorney's lien can attach to the proceeds of a divorce settlement. The Wisconsin Supreme Court stopped short of addressing this issue in *Stasey v. Miller*, 168 Wis.2d 37, 483 N.W.2d 221 (1992). In *Stasey*, a circuit court granted an attorney a judgment lien on her client's divorce settlement proceeds. The attorney and client had agreed upon this fee arrangement in writing before the case went to trial. The client appealed, and the court of appeals certified the issue to the supreme court. The supreme court reversed, holding that the circuit court did not have subject matter jurisdiction to determine the fees a client owed to an attorney in a divorce action. *Id.* at 228. In dicta, the court cited *Matter of Richland*, *supra*, in recognizing equitable liens, but declined to decide whether attorney's liens are appropriate in divorce actions. Despite the court's coyness, it can be inferred from *Sta-*

*sey* that an attorney's lien claimed on divorce funds may warrant different consideration from an attorney's lien claimed on funds derived from contract and tort judgments.

■■■ Wis.Stat. § 757.36 was enacted because the common law did not allow liens to attach in every case. Before the statute, the "liquidated"[3] or "unliquidated"[4] nature of the client's claim dictated if and when an attorney could claim a lien on the client's recovery. An attorney's lien was valid and enforceable before a judgment was granted if the case was founded upon a written contract or negotiable instrument. *Courtney v. McGavock*, 23 Wis. 619 (1869). Pre-judgment attachment in such cases gave the attorney's lien priority over other liens that attached at or after judgment. One such case was *Rice v. Garnhart*, 35 Wis. 282 (1874), where the claim was "liquidated" because it was founded upon a written contract. In *Rice*, when there was evidence that the client had "duly assigned to [the attorneys] the judgment ... in part payment for their services" the attorney's lien took priority over the competing creditor's post-judgment claim. Even if the client had not assigned the judgment, the attorneys would still have had lien priority because the claim was ascertainable and assignable.

On the other hand, where the action was for unliquidated damages in tort or contract, the court vacillated on whether the common law allowed a lien to attach before judgment without a written agreement. First, in *Courtney, supra*, an agreement was required.[5] Then, in *Kusterer v. The City of Beaver Dam*, 56 Wis. 471, 14 N.W. 617 (1883), the court held that even if the attorney and client had a written agreement for an attorney's lien, there was no lien if the claim was unliquidated. *Kusterer* was a "slip and fall," which the client settled before judgment. In finding that the attorneys did not have a lien despite a written agreement, the court in *Kusterer* regretted the inequitable result but could not ignore the unassignable, unliquidated nature of the tort claim.

Finally, in *Voell v. Kelly*, 64 Wis. 504, 25 N.W. 536 (1885), the court once again found there was no lien in an unliquidated claim without a written agreement. However, the absence of an agreement was not the dispositive issue when the client accepted a settlement of the personal injury claim. The court found there was no lien because "it is doubtful if the attorney has any lien upon the judgment for fees which would prevent his client from settling or discharging it." *Id.* at 505, 25 N.W. 536. In these pre-statute cases, when an attorney's fees were secured by a client's unliquidated, unassignable claim, no lien could attach before judgment. An attorney was out-of-luck if the client settled before trial.

In response to this unfair situation, in 1891, the legislature enacted the statutory attorney's lien which must arise under a written agreement. The current version, Wis. Stat. § 757.36 provides:

> Any person having or claiming a right of action, *sounding in tort or for unliquidated damages on contract*, may *contract* with

---

3. "Liquidated" is defined as a paid or settled debt, claim or obligation. The American Heritage Dictionary 735 (2d ed. 1982). "Liquidated claim" is defined to be "amount of which has been agreed on by parties to action or is fixed by operation of law. A claim which can be determined with exactness from parties' agreement or by arithmetical process or application of definite rules of law, without reliance on opinion or discretion." Black's Law Dictionary 930 (6th ed. 1990).

4. "Unliquidated claim" is defined to be "claim which has not been finally determined either as to liability or amount of damages. A disputed claim. Under the law of accord and satisfaction, a claim or debt will be regarded as unliquidated if it is in dispute as to the proper amount. For purposes of rule that prejudgment interest is allowed if a claim is liquidated but not if a claim is unliquidated, claim is unliquidated when the amount of the damages cannot be computed except on conflicting evidence, inferences and interpretations." Black's Law Dictionary, *supra* at 1537.

5. In *Courtney*, in lieu of an agreement, the attorneys relied upon the insolvent client's "honesty and assurance that they should be paid out of ... [any] recovery." *Id.* at 620. The client settled before a judgment, however, and the attorneys sought to recover their fees. The court in *Courtney* said, "it would be very gratifying to us if the law would permit them to do so ... but independently of an agreement to that effect between the [client] and his attorneys, ... no such lien attaches before judgment to a claim for unliquidated damages of this nature." *Id.* at 622–3.

any attorney to prosecute the action and give the attorney a lien upon the cause of action and upon the proceeds or damages derived in any action fought for the enforcement of the cause of action, as security for fees in the conduct of the litigation[.] (Emphasis added.) Because the statute's reference to tort and unliquidated contract claims seems to be based in the unliquidated and unassignable nature of the claims, it probably should not have been limited to the fields of torts and contracts. The statute could have been drafted to cover attorney's liens under written agreement in all claims that are by nature unliquidated,· but such a reading is not within the clear meaning of the present statute.

Shortly after the enactment of the statute, the court decided *Stanley v. Bouck,* 107 Wis. 225, 83 N.W. 298 (1900). As it had done earlier in *Rice,* the supreme court held that the statute did not apply because the claim for property insurance was deemed a liquidated claim and there was an attorney's lien derived from the common law. The holding in *Rice* was still good law: equitable attorney's liens were available on liquidated claims. However, in both *Rice* and *Stanley* the attorney's lien was created by writing— an assignment of the client's interest to the attorney [6]—and it could be argued that the *Stanley* court upheld the equitable lien because there was a written agreement. However, the *Stanley* decision cites *Rice,* and the *Rice* court said it would have upheld the lien even without a written agreement. Moreover, the *Stanley* court stated: "[T]his equitable lien ... whether resting upon agreement or raised by operation of law, is complete without notice to the opposite party." That may include "without a written agreement."

The application of the common law lien presents three possibilities: First, there might be a "jurisdictional" limitation, and an equitable lien would only be available when claims are liquidated. Second, the equitable lien may be available whenever there is unjust enrichment and the statutory lien does not give relief. Or third, there might be a "policy" against liens in divorce actions.

■ Under the first possibility with its "jurisdictional" limitation, the equitable lien would only be available if countenanced by the common law, which the statutory lien was created to supplement. Viewed this way, an attorney's lien arises either under the statute or the common law. Under the common law, an agreement is not required, but a liquidated claim is. The "jurisdictional" limitation then requires classifying the Edl claim as either "liquidated" or "unliquidated." [7] No Wisconsin case has been found which classifies the claims made in a divorce action along these exact lines, so a general review is required.

■ Unliquidated claims are those that have undetermined damages. Tort claims are the exemplar of unliquidated claims. "[T]he kinds of damages associated with personal injury suits epitomize the concept of unliquidated damages." *Nelson v. Travelers Insurance Company,* 102 Wis.2d 159, 169, 306 N.W.2d 71 (1981). Unliquidated claims are ones where the measure of damages is ultimately a discretionary determination.

**6.** Before 1898, the common law governed voluntary assignments for benefit of creditors. *Mayfield W. Mills v. Goodrich & Martineau Co.,* 189 Wis. 406, 408, 207 N.W. 954 (1926). Assignments were done by written contract and the court construed the language of the assignment to determine its validity. *See Cribben et al., v. Ellis,* 69 Wis. 337, 34 N.W. 154 (1887).

In 1898, the common law was codified as § 1694 Wis.Stat. to regulate assignments. This statute was amended in 1937 as § 128.02 Wis. Stat. The modern-day version, which also requires a written agreement, provides in relevant part:

(1) Voluntary assignments for the benefit of creditors may be made *to* an assignee ...

who shall ... file the assignment and deliver to the clerk of the circuit court of the county in which such assignor resides ... a bond as required by § 128.09.

**7.** Similarly, claims are classified as "liquidated" and "unliquidated" in cases where a court must decide if a prevailing party is entitled to prejudgment interest. The general rule is that absent an agreement to the contrary, "liquidated" claims bear interest whereas "unliquidated" do not. *Beck Investment Co. v. Ganser,* 259 Wis. 69, 72, 47 N.W.2d 490 (1951). Courts contemplating pre-judgment interest look to the damages requested in order to classify the claim.

By contrast, the measure of damages for liquidated claims is an ascertainable loss. Often in breach of contract cases there is "a fixed and determinate amount which could have been tendered and interest thereby stopped; the amount of the claim must be known and determined, or readily determinable." *Maslow Cooperage Corp. v. Weeks Pickle Co.*, 270 Wis. 179, 192–3, 70 N.W.2d 577 (1955); *See also De Toro v. DE–LA–CH, Inc.*, 31 Wis.2d 29, 142 N.W.2d 192 (1966). Under *De Toro*, a request for credible, dollar-specific damages may be evidence that a claim is liquidated. But not all claims rooted in contract are liquidated. In *Beck Investment Co. v. Ganser*, 259 Wis. 69, 47 N.W.2d 490 (1951), recovery of rent was unliquidated after a written lease was voided because the proper measure of damages was at issue. Under another test, a liquidated claim is one that is assignable. But that definition runs such a high risk of being circular that it is unproductive to pursue.

The Bankruptcy Act of 1898 used the "liquidated" and "unliquidated" distinction in determining allowed claims under § 63, predecessor to § 502 of the Bankruptcy Code. Unlike the confusing reference to unliquidated claims found in the Wisconsin attorney's lien statute as those "sounding in tort or for unliquidated damages on contract," the Bankruptcy Act explicitly referred to the nature of the claim. Sections 63a [8] and 63b [9] discussed claims that were "fixed" as to liability and "unliquidated" claims that could be liquidated post-petition.

Under § 63, not all contract claims were "fixed" or liquidated. In *Dunbar v. Dunbar*, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1903), Mr. Dunbar sought to divorce his wife and, in exchange for an uncontested divorce, agreed by contract to pay alimony and child support. The contract included a contingency that Mr. Dunbar's obligation would end should Mrs. Dunbar remarry. When Mr. Dunbar filed bankruptcy he sought to discharge the contractual obligation. The court, however, found the claim was not allowed because proof of the contingent debt demanded a valuation or estimation which was substantially impossible to prove. Nobody, least of all the bankruptcy court, could predict whether Mrs. Dunbar would remarry. In short, under the Bankruptcy Act a liquidated claim was characterized by a fixed and non-contingent debt rather than by the body of law under which the claim arose.

Under the Act, even tort claims could be "fixed" and liquidated. In *Haynes Stellite Co. v. Chesterfield*, 97 F.2d 985 (6th Cir. 1938), Haynes Company had a tort claim against Mr. Chesterfield for damages arising from a patent infringement. When Mr. Chesterfield filed bankruptcy, the district court had entered judgment as to Mr. Chesterfield's liability but still had not approved the parties' stipulation as to damages. Thus, Haynes argued its tort claim could not be allowed nor discharged in bankruptcy as it had not yet been liquidated. The court, however, found the tort claim was "fixed" as to liability under § 63, and damages could be proved according to the parties' stipulation. Thus, under the Bankruptcy Act, even claims arising under tort law were "liquidated" claims if they had been reduced to judgment pre-petition.

In the present case, Ms. Edl's claim was reduced to judgment pre-petition. Even if Ms. Edl's divorce claim was at one time unliquidated,[10] it became liquidated on No-

---

8. 11 U.S.C. § 103 Section 63a provided:

   Debts of the bankrupt may be proved and allowed against his estate which are founded upon
   (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition ... whether then payable or not....

9. 11 U.S.C. § 103 Section 63b provided:

   Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and

may thereafter be proved and allowed against his estate.

10. While property is either marital or non-marital and its classification fixed and ascertainable, property division depends upon the particulars of the marriage. Under Wis.Stat. § 767.255, a divorce court presumes that marital property is to be divided equally, but the court may alter the distribution after considering a laundry list of factors. In that respect, Ms. Edl's claim may have been unliquidated. *See In re the Marriage of Lutzke*, 122 Wis.2d 24, 361 N.W.2d 640 (1985); *In re the Marriage of Arneson*, 120 Wis.2d 236, 355 N.W.2d 16 (Ct.App.1984).

vember 3, 1995 when the state court entered judgment in her divorce. At judgment her claim became "a fixed and determined amount." Under *Rice* and *Stanley,* the common law allows attorney's liens in liquidated claims without a written agreement. Thus, under the "jurisdictional test" Mr. Kinast could have an equitable attorney's lien. If so, when Ms. Edl filed bankruptcy on March 19, 1996 giving the trustee an interest in the divorce proceeds, Mr. Kinast already had a prior lien.

Under the second possibility, the equitable lien would be "filling in" whenever the statute, for whatever reason, could not provide relief—if the case does not "sound in tort or unliquidated damages in contract" or if the attorney does not have a fee agreement. This broadly "equitable" approach ignores the issues raised in *Stanley.* It comports with *Wurtzinger* and *Richland,* which neither required writing nor discussed the nature of the action brought. Each allowed a lien when the lawyer performed some or all of the services leading to recovery and the lien was necessary to prevent unjust enrichment. In the present case, Mr. Kinast had no written fee agreement. He could certainly argue that equity demands that a lien exist to prevent Ms. Edl's unjust enrichment.

Even if in concept an equitable lien was otherwise available to Mr. Kinast, the common law might embrace a policy against attorney liens in divorce proceeds. In New York, an attorney can not have a statutory lien on a client's alimony. *Turner v. Woolworth,* 221 N.Y. 425, 117 N.E. 814 (1917). The purpose of alimony is support, and "[e]quity, which creates the [alimony] fund, will not suffer its purpose to be nullified." *Id.* at 816. Under New York law, alimony is not an equitable asset liable generally for the payment of debts. *Romaine v. Chauncey,* 129 N.Y. 566, 29 N.E. 826 (1892).

The Wisconsin Supreme Court has also recognized the uniqueness of alimony, although not in the context of an attorney's lien case. In *Courtney v. Courtney,* 251 Wis. 443, 446, 29 N.W.2d 759 (1947), it said that "[alimony] judgments differ from other judgments in [that] they do not create the debtor-creditor relationship of the usual sort." In *Courtney,* a wife attempted to garnish her husband's pension fund for the back alimony. The husband objected, claiming that a pension fund was exempt from garnishment by statute. Citing two New York cases, the court found that the statutory exception did not apply because the fund was created for the same purpose as alimony—supporting those legally dependent upon the pensioner for support and maintenance. Despite its inclination to protect the alimony award, the court went on to deny the garnishment because an alimony judgment did not put the wife in the shoes of a judgment creditor with a final and assignable judgment. Alimony "is always subject to modification by the court during the life of the parties...." *Id.* at 450, 29 N.W.2d 759. Thus, as viewed in *Courtney,* alimony is an important support obligation but is not a "debt" in the traditional sense.

If Ms. Edl's divorce proceeds were alimony, they might well be protected from an attorney's lien. However, in the present case, Ms. Edl's divorce award is a property settlement. While merely labeling an obligation "alimony" does not make it so, Henry J. Sommer & Margaret Dee McGarity, *Collier Family Law and the Bankruptcy Code,* ¶ 3.02[2] at 3–12 (1996), in this case Ms. Edl herself said she received "an equitable division of [ ] marital property." [11] (Plaintiff's Trial Brief, at ¶ B). In Wisconsin, where marital property is the law, property is divided at divorce [12] to satisfy each spouse's existing property interest, while alimony is awarded if there is a marital obligation to support.[13] Sommer & McGarity, *supra* at 6–27. Thus, the policy that declares alimony

**11.** However, Mr. Kinast states that "[t]he [divorce] case was contested on all issues [including] ... maintenance [and] property division...."

**12.** Wis.Stat. § 767.255 provides that there is a presumption that the property at divorce shall be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering all of thirteen factors.

**13.** *See Trieschmann v. Trieschmann,* 178 Wis.2d 538, 504 N.W.2d 433 (finding that awarding maintenance or alimony is within the discretion of the court).

not to be a debt in the usual sense would not apply to a property division. No other policy for treating a Wisconsin divorce award differently from other judgments has been suggested or found. Thus there would appear to be no stated policy against a lien attaching in this case.

Accordingly, Mr. Kinast has an equitable attorney's lien. Fortunately the decision of this case does not turn on whether the lien arises under the strict "jurisdictional" analysis of the older cases decided under the common law or under the more generally stated equitable purpose cited in the more recent cases considering attorney's liens. Since the lien can be sustained under the narrower jurisdictional analysis there is no conflict with the apparently broader modern view. The Wisconsin Supreme Court in *Stasey, supra*, 168 Wis.2d at 61, 483 N.W.2d 221, was content to leave unclear "the existence, nature, and means of enforcement of a common law attorney lien in a divorce action." Although no specific policy impediment has been found, this court also declines to decide whether the equitable attorney's lien should be available beyond its current "jurisdiction" in liquidated claims. The current state of the law allows Mr. Kinast to have an equitable attorney's lien, the complaint must be dismissed and an order may be entered accordingly.