# FOR PUBLICATION



**FILED**

Oct 25 2012, 9:06 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**W. BRENT THRELKELD**
**ASHLIE K. KEATON**
Threlkeld & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DEAN ARNOLD**
**KATHERINE G. KARRES**
Ken Nunn Law Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1202-CT-68 |
| | ) | |
| KEN NUNN LAW OFFICE, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1012-CT-55347

**October 25, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

State Farm Mutual Automobile Insurance Company ("State Farm") appeals the trial court's order denying its motion for summary judgment against the Ken Nunn Law Office ("Nunn"). State Farm raises one issue, which we restate as whether the court erred in denying its motion for summary judgment. We reverse and remand.

The relevant facts follow. In May 2009, Kenneth Henderson was a passenger in a vehicle involved in an accident or chain reaction collision involving a vehicle driven by Joshua Beal.[1] Henderson entered into a Fee Agreement with Nunn pursuant to which Nunn would represent Henderson "for any claims [he had] against: The insurance company for the person or persons at fault" in connection with the accident.[2] Appellant's Appendix at 35.

On May 21, 2009, State Farm, Beal's insurer, received a letter from Nunn giving State Farm notice of Nunn's representation of Beal. State Farm received a settlement demand from Nunn on November 16, 2009.

Nunn initiated a lawsuit on behalf of Henderson against Beal on or about March 2, 2010. Henderson sent a letter to Nunn dated March 22, 2010 stating that he was not satisfied with the way the case had been handled by Nunn and that he no longer needed Nunn's services.

---

[1] This is the spelling used by the parties in their summary judgment motions and appellate briefs and in a designated affidavit of a claim representative for State Farm; however, the complaint filed by Nunn on behalf of Henderson in the underlying personal injury lawsuit refer to "Joshua Bieal." Appellant's Appendix at 34.

[2] Pursuant to the Fee Agreement, Henderson agreed to pay Nunn "1/3 of all amounts recovered or offered (no fee on property damage)." Appellant's Appendix at 35.

On April 12, 2010, Nunn filed a "Notice of Lien for Attorney's Fees" (the "Notice of Lien") with the court and sent copies to Henderson and State Farm. Id. at 41. The Notice of Lien provided in part:

> Comes now [Nunn] and hereby files their claim and lien against [Henderson] in regards to any settlements or judgments rendered in favor of [Henderson]. The claim is as follows:
>
> > For legal services rendered to [Henderson] in regards to this lawsuit in the amount to be determined based upon quantum meruit, statutory and case law; and for expenses in the sum of $541.62 advanced on behalf of [Henderson] in regards to his claim and this lawsuit.

Id. at 41-42. State Farm received a copy of the Notice of Lien on April 16, 2010.

On April 19, 2010, upon a motion to withdraw appearance by Nunn, the court entered an order that the appearance of Nunn be withdrawn.

On or about April 27, 2010, State Farm and Henderson reached an agreement in settlement of Henderson's claim for the amount of $12,146.15. State Farm issued payment to Henderson in the amount of $11,604.53 and issued separate payment to Nunn in the amount of $541.62 for expenses advanced on behalf of Henderson.

On December 28, 2010, Nunn filed a Complaint for Damages against State Farm and Henderson alleging that Henderson failed to compensate Nunn for the legal services it provided and that State Farm and Henderson had a duty and failed to protect the "*Quantum Meruit* Attorney's Fee Lien" of Nunn. Id. at 7-8.

On August 16, 2011, State Farm filed a motion for summary judgment arguing that Nunn did not allege any facts which would support a claim in equity or contract against State Farm for liability for attorney fees for services rendered to Henderson. On

3

October 14, 2011, Nunn filed a response to State Farm's motion arguing that State Farm had notice of Nunn's attorney fee lien and failed to honor the lien, that State Farm had a duty to notify Nunn and the court of its intent to settle Henderson's claim, that even though a client has a right to discharge an attorney the attorney is entitled to compensation for the attorney's work as a proportion of the contingency fee or for the reasonable value of services rendered, and that Nunn relied on State Farm's past practice of voluntarily paying attorney fee liens. On October 31, 2011, State Farm filed a reply arguing that it had no duty to inform Nunn of the settlement of Henderson's claim because Nunn was no longer Henderson's attorney of record or representing Henderson's interests at the time of settlement, that Nunn may not recover against State Farm under a theory of quantum meruit because the theory only permits recovery when some benefit has been incurred by the party against whom recovery is sought, and that Nunn failed to produce any evidence that State Farm was unjustly enriched by the legal services Nunn provided or that State Farm had a regular practice of voluntarily paying attorney fee liens.

In an order dated November 28, 2011, and file-stamped November 30, 2011, the court denied State Farm's summary judgment motion. On December 26, 2011, Nunn filed a motion for default judgment against Henderson. On December 27, 2011, State Farm requested the trial court to certify the November 28, 2011 order for interlocutory appeal. On January 4, 2010, the court entered an order granting default judgment against Henderson in the amount of $3,818.72 plus costs of $289 and an order certifying the November 28, 2011 order for interlocutory appeal. This court accepted jurisdiction of the interlocutory appeal.

4

The issue is whether the trial court erred in denying State Farm's motion for summary judgment against Nunn. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 633 (Ind. 1991).

A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 975 (Ind. 2005). If the movant fails to make this *prima facie* showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002).

State Farm contends that the issue before the trial court was purely legal in nature with no factual disputes and that State Farm owed no duty to Nunn to protect a claimed lien for attorney fees arising out of the Fee Agreement between Nunn and his former

5

client Henderson. State Farm argues that "[w]hile Indiana law supports equitable liens for attorney fees when a party receives a benefit from the services rendered by the attorney, there is no legal support for the premise that a party who has not received any benefit from the attorney's services would owe a duty to protect a claimed lien" and that "[t]his is especially evident where the attorney is no longer plaintiff's attorney of record at the time of settlement." Appellant's Brief at 7. State Farm maintains that it owed no duty to protect Nunn's claimed equitable lien for attorney fees pursuant to the Fee Agreement, Indiana's quantum meruit jurisprudence, Indiana's statutory law governing attorney liens, Indiana common law, or a theory of estoppel.

Nunn argues that it seeks compensation for work it invested in Henderson's claim. Nunn argues that "[i]n the interest of fairness and justice, when a lien is filed in Court and the defendant/insurance company/defense attorney is on notice of the lien, Indiana Courts should not allow them to ignore the lien." Appellee's Brief at 6. Nunn asserts that "[a]s [it] represented [] Henderson for almost ten (10) months, facilitated the settlement between [] Henderson and State Farm, and filed a valid lien for attorney's fees . . . , it does have a valid claim for fees against the defendants, including State Farm" and that Nunn "is entitled to the reasonable value of the services rendered to the client under the theory of quantum meruit, or value conferred." Id. at 7. Nunn further argues that State Farm had a duty to notify Nunn and the trial court of its intent to settle directly with Henderson to allow the court to determine if Nunn had a valid lien against State Farm and that State Farm breached this duty. Nunn also argues that it relied on State Farm's prior practice of voluntarily paying attorney fee liens.

6

In its reply brief, State Farm states that it does not dispute that a valid lien for attorney fees may exist in Nunn's favor against his former client Henderson or that it may be entitled to compensation by Henderson but nevertheless that Nunn cannot recover from State Farm. State Farm also argues that Nunn does not cite to authority for its position that it had a valid lien against the settlement proceeds and that Nunn failed to designate evidence to support its right to recover under an estoppel theory.

Before addressing State Farm's arguments related to a purported attorney lien and quantum meruit, we note that the designated evidence reveals that in May 2009 Henderson retained Nunn to represent him in his lawsuit against Beal, who was insured by State Farm; that Henderson sent a letter dated March 22, 2010, to Nunn discharging Nunn as his attorney in the lawsuit against Beal; that on April 12, 2010, Nunn filed the Notice of Lien, which was received by State Farm on April 16, 2010; that on April 19, 2010, the court entered an order that the appearance of Nunn be withdrawn upon its motion; and that on or about April 27, 2010, State Farm and Henderson reached an agreement in settlement of Henderson's claim. We observe that Nunn filed its Notice of Lien after it was discharged from its representation of Henderson and before there was a settlement or judgment in the lawsuit. The Fee Agreement was between Henderson and Nunn, and State Farm was not a party to the agreement.

A.      Attorney Fee Lien

With respect to liens available for the protection of attorney fees, Indiana recognizes a lien established by statute and a lien arising in equity. See Wilson v. Sisters of St. Francis Health Serv.'s Inc., 952 N.E.2d 793, 796 (Ind. Ct. App. 2011) (citing State

7

ex rel. Shannon v. Hendricks Circuit Court, 243 Ind. 134, 139, 183 N.E.2d 331, 333 (1962)). See also Timothy O'Hara & Curtis T. Jones, *Collection of Attorney Fees by Assertion of Liens in Indiana*, RES GESTAE, Dec. 2007, at 25 (reviewing attorney liens under Indiana law).[3]

### 1. Statutory Lien

A statutory attorney fee lien is governed by Ind. Code § 33-43-4-1, which provides that "[a]n attorney practicing law in a court of record in Indiana may hold a lien for the attorney's fees on a judgment rendered in favor of a person employing the attorney to obtain the judgment."[4] As admitted by Nunn in a response to a request for admissions, the statutory lien is inapplicable in this case because no judgment was entered.[5] See Wilson, 952 N.E.2d at 796 n.1 (noting the requirements of Ind. Code § 33-43-4-1 and finding that the statutory lien was inapplicable because no judgment had been entered). See also O'Hara & Jones, *supra*, at 26 (noting that "an attorney is only entitled to a

---

[3] It has been noted that "[i]n a strict sense, there is no such thing as a lien upon a thing not in possession," that the lien "which an attorney is said to have on a judgment (which is, perhaps, an incorrect expression) is merely a claim to the equitable interference of the court to have the judgment held as a security for his debt," and that "[a]n attorney's lien upon a judgment, as by force of usage we are permitted to designate his claim upon the judgment recovered, is founded upon the same equity which gives to every person who uses his labor and skill upon the goods of another, at this request, the right to retain the goods till he is paid for his labor." Leonard A. Jones and Edward White, A TREATISE ON THE LAW OF LIENS, COMMON LAW, STATUTORY, EQUITABLE AND MARITIME § 155, at 142 (3rd ed. 1914) (citations and internal quotation marks omitted).

[4] The general rule that an attorney has a lien on a judgment obtained for the attorney's client "was first established by the courts. In some states the lien did not exist till it was declared by statute; and in several states, in which the courts had established the lien, this has by statute been extended or modified so that it is quite a different thing from the lien which the courts established and enforced." Jones & White, *supra*, § 158, at 145 (citations and internal quotation marks omitted). The majority of states have enacted a statute governing an attorney lien upon a judgment. See id., § 158, at 145 n.22 (providing a summary of the states in which this lien prevails in some form, including the State of Indiana); § 158, at 145 n.23 (providing a summary of the several states in which the lien does not exist).

[5] Specifically, in the response Nunn admitted that Ind. Code § 33-43-4-1 "is inapplicable to the attorney lien alleged and at issue in this cause of action." Appellant's Appendix at 45.

statutory lien for the attorney fees on any 'judgment rendered' in favor of the client," that "[t]his 'judgment' requirement has been strictly enforced," and that "an attorney seeking a lien for work rendered on a case that settles must appeal to the court's equitable powers or assert a retaining lien over something of the client's that the attorney possesses").

### 2.    Equitable Lien

Indiana courts have also recognized liens which arise in equity to protect attorney fees. See Wilson, 952 N.E.2d at 796; see also Shannon, 243 Ind. at 139, 183 N.E.2d at 333 ("The rule is well established in Indiana that the statutory lien is not the only lien available for the security of an attorney in performing services beneficial to his client, but that equity supplies a lien independent of statute") (citing Justice v. Justice, 115 Ind. 201, 208, 16 N.E. 615 (1888); Koons, Adm'r, et al. v. Beach, 147 Ind. 137, 139-140, 45 N.E. 601, 46 N.E. 587 (1897), reh'g denied); see also Leonard A. Jones and Edward White, A TREATISE ON THE LAW OF LIENS, COMMON LAW, STATUTORY, EQUITABLE AND MARITIME § 174, at 162-164 (3rd ed. 1914) (providing that under Indiana law an attorney may also have an equitable lien for their fees upon funds they secure by their services for their clients). An attorney lien of this variety may be characterized as a retaining lien or as a charging lien. See Wilson, 952 N.E.2d at 796.

"A retaining lien is the right of the attorney to retain possession of a client's documents, money, or other property which comes into the hands of the attorney professionally, until a general balance due him for professional services is paid . . . and exists as long as the attorney retains possession of the subject matter." Id. (citing Shannon, 243 Ind. at 139-140, 183 N.E.2d at 333). See also Bennett v. NSR, Inc., 553

9

N.E.2d 881, 882-883 (Ind. Ct. App. 1990) ("It is considered equitable that lawyers be allowed to retain documents and other personal property of their clients until paid."). Nunn does not claim a right to retain possession of Henderson's property, i.e., money or other property, until the balance due for professional services is paid, and thus a retaining lien is inapplicable in this case. See Wilson, 952 N.E.2d at 796 (noting that the attorney never had possession of his client's money, and consequently, that a retaining lien was inapplicable).

In Indiana, "[a] charging lien is the equitable right of attorneys to have the fees and costs due them for services in a suit secured out of the judgment or recovery in that particular suit." Wilson, 952 N.E.2d at 796. This court has stated that "[r]etaining liens are to be distinguished from charging liens which are the equitable rights of attorneys to have the fees and costs due them for services in a suit secured out of the judgment or recovery in that particular suit" and that "[u]nlike retaining liens, possession is not essential to a charging lien." Bennett, 553 N.E.2d at 883.

We observe that, while Nunn may have such a valid and enforceable charging lien as to amounts recovered by Henderson in his suit against Beal,[6] Nunn does not point to authority for the proposition that it has a valid charging lien or may enforce such a lien against an entity that is not and never was Nunn's client. Wilson, 952 N.E.2d at 796 (noting that the attorney cited no authority for the proposition that insurance payments made to a third party under the client's health insurance policy were subject to a charging lien). Although a number of states do not recognize an equitable charging lien, see 23

---

[6] We do not address the issue of Nunn's entitlement to attorney fees against Henderson.

10

WILLISTON ON CONTRACTS § 62:11 (4th ed.) (noting that, "[i]n some jurisdictions, there are cases holding that a common law charging lien exists, but in most states it rests entirely on statutes"), as previously mentioned Indiana is among the states that has recognized a charging lien separate from the attorney lien statute. See Shannon, 243 Ind. at 139, 183 N.E.2d at 333.

Indiana's early opinions on this issue attempted to describe the limits of an equitable lien for the protection of attorney fees.[7] The case of Hanna v. Island Coal Co., 5 Ind. App. 163, 31 N.E. 846, 847 (1892), provides some guidance on this issue where a compromise or settlement was reached.

In Hanna, Calvin Hanna brought an action against Island Coal Co. to recover attorney fees. 5 Ind. App. 163, 31 N.E. at 847. Charles Starke had previously employed Hanna to bring a suit against Island Coal Co. for personal injuries Starke sustained in Island Coal Co.'s coal mines by reason of the company's negligence. Id. Hanna alleged that Island Coal Co., knowing these facts and after suit had been commenced, compromised and settled the cause of action with Starke without the knowledge or consent of Hanna and paid a settlement amount directly to Starke. Id. Hanna further alleged that, prior to the settlement, he had given notice in writing to Island Coal Co. of "his rights in the premises." Id. Hanna also alleged that Island Coal Co. entered into a fraudulent collusion with Starke and compromised and settled the cause of action with

---

[7] For a discussion of the history of attorney liens in Indiana, including some discussion of Hanna, infra, and other early Indiana cases, see Benjamin Watson, THE LAW OF INDIANA RELATING TO STATUTORY LIENS (W.H. Anderson 1996).

11

him, knowing him to be insolvent, for the purpose of cheating Hanna out of his fees and out of his lien for services and expenses.  Id. at 848.

The court, conceding that Hanna had the right to receive from Starke the money expended by him as well as for the services rendered, turned to the issue of whether the facts stated made a cause of action against Island Coal Co.  Id. at 847.  The court noted that the statutory lien in effect at the time was available only after a judgment was rendered and that, because the suit was compromised before judgment, the statute had no application.  Id.  After discussing several prior opinions which found that an attorney may hold a lien for fees without the aid of the statute, the court noted that "until after judgment, the client may settle and compromise and release the cause of action in any manner he pleases without consulting his attorney, and the attorney has no power to prevent it."  Id. at 848.  The court stated that "[i]n such a case a lien cannot be acquired before judgment, even by agreement between the attorney and client, that will prevent the client from compromising and releasing the cause of action without the consent of the attorney, although the defendant may have notice of the agreement."  Id.  The court further held:

> If the cause of action is one for unliquidated damages, and is not assignable, the client cannot give his attorney any lien upon it that will prevent a settlement or compromise by the parties before judgment, even if the amount is definitely fixed, and an agreement made that the same shall become a lien, and the adverse party notified of the fact.  Actions for slander and libel, assault and battery, *personal injuries resulting from the negligent conduct of others*, are within the rule.

12

Id. The court then noted that it was apparent that the action for personal injury alleging negligence was unassignable and was for unliquidated damages.[8] Id.

Based on the foregoing, the court, noting that Hanna's right to proceed against Starke would remain unimpaired, held that Starke had the right to compromise or release his claim against Island Coal Co. at any time before judgment, that there were no charged facts showing fraudulent collusion between Island Coal Co. and Starke, that "[t]he contract to bring the action was made with Starke by [Hanna]" and "[t]he appellant had nothing to do with it," that "[h]aving settled and compromised [the negligence lawsuit] before judgment, [Island Coal Co.] was released," and that Hanna "having acquired no lien upon or interest in such cause of action, no obligation in his favor was created by the transaction against [Island Coal Co.]." Id.

Several subsequent Indiana opinions and treatise articles have discussed the analysis in Hanna. See Olczak v. Marchelewicz, 98 Ind. App. 244, 188 N.E. 790, 792

---

[8] The court in Hanna cited to Courtney v. McGavock, 23 Wis. 619 (1869), in support of the distinction between the liquidated and unliquidated nature of a client's claim. See Hanna, 31 N.E. at 847. In In re Edl, the court noted that in response to the rule established in Courtney and subsequent cases, the Wisconsin legislature enacted a statutory attorney's lien. 207 B.R. 611, 614 (Bkrtcy. W.D. Wis. 1997). The statute referenced provided in part that "[a]ny person having or claiming a right of action, *sounding in tort or for unliquidated damages on contract*, may contract with any attorney to prosecute the action and give the attorney a lien upon the cause of action and upon the proceeds or damages derived in any action fought for the enforcement of the cause of action . . . ." Id. at 614-615 (emphasis added). The court in In re Edl addressed the specific language of the statute and what types of claims may be covered by its language. See id. 615-617. In any event, Indiana's attorney lien statute is not similar to the Wisconsin statute. Further, the current Indiana statute is similar to the version in effect at the time of Hanna and was not revised by the legislature to respond to the distinction articulated in Hanna between claims which were unassignable or were for unliquidated damages and those which were not. See Ind. Code § 33-43-4-1 (providing that an attorney "may hold a lien for the attorney's fees on a judgment rendered in favor of a person employing the attorney to obtain the judgment"); Hanna, 31 N.E. at 847 ("The only statutory method of obtaining a lien by an attorney against his client in this state is given by section 5276 of the Revised Statutes, and that is only 'on any judgment rendered in favor of any person or persons employing such attorney to obtain the same'"). See also Watson, *supra*, at 38 (citing Hanna and noting that in Indiana no equitable lien can be acquired before judgment in an action for unliquidated damages which includes an action for personal injuries).

(1934) (citing Hanna and noting that no lien can be acquired before judgment that would prevent the client from compromising and releasing his claim without the attorney's consent and holding that "[t]he fund upon which appellant claims a lien passed into the hands of his client who had the right to make a settlement" and that "[u]nder such circumstances, there is no enforceable lien"); Miedreich v. Rank, 82 N.E. 117, 119 (Ind. Ct. App. 1907) (stating that "[t]hough a party may, without the consent of his attorney, make a *bona fide* adjustment with the adverse party, and dismiss an action or a suit before a judgment or a decree has been rendered therein, if it appears, however, that such settlement was collusive and consummated pursuant to the intent of both parties to defraud the attorney, the court in which the action or suit was pending may interfere to protect him, as one of its officers . . . ."); Benjamin Watson, THE LAW OF INDIANA RELATING TO STATUTORY LIENS (W.H. Anderson 1996), at 38-39 (reviewing Hanna and other early Indiana opinions, noting the distinction between claims for liquidated and unliquidated damages and that no equitable lien can be acquired before judgment in an action for unliquidated damages such as for personal injury actions, and stating that "[t]he fact that the defendant in the action for damages made a settlement with the plaintiff after notice from the attorney of the amount due him from his client for legal services and money expended, and the further fact of the insolvency of the client, would in nowise render the defendant liable to the attorney"); Jones & White, *supra*, § 174, at 162-164 (reviewing liens for the protection of attorney fees in Indiana and stating in part that an attorney "can have no lien on a fund secured for his client by compromise where no judgment is entered") (citing Koons, 147 Ind. 137, 45 N.E. 601, 46 N.E. 587).

Further, a number of other states have arrived at the same or similar result where an attorney's client or former client settles or compromises a claim. See Robert L. Rossi, ATTORNEYS' FEES, Volume 2, § 12:26 (3rd ed. 2012) (providing that "[b]y dismissing, compromising, or settling his cause of action, a client may defeat his attorney's right to a lien which he would otherwise have had, even though the client agreed to pay the attorney a percentage of the proceeds of any judgment recovered") (footnotes omitted) (citing Lyman v. Campbell, 182 F.2d 700, 701-702 (D.C. Cir. 1950) (noting, where an attorney represented plaintiffs pursuant to contingent fee arrangements, the attorney filed a notice of lien when he learned of the defendant's intended action of making certain payments to plaintiffs, and the defendant later made payments to one or more of the plaintiffs by way of a set-off to a previous deficiency, the prevailing rules related to charging liens and that "[w]e have not been advised of any decisions in this or any other jurisdiction in which the courts have in the absence of statute granted relief to an attorney situated as the appellant is in this case, namely, where settlement has been effected through set-off, prior to the obtaining of a judgment or decree, and where no conspiracy to defeat the attorney's claim has been charged" and holding that "under the facts presented, and on the basis of the well-established authorities in this field, the District Court was right in denying the [attorney's] motion" and "[t]he [attorney] must look to his client for compensation"); Coughlin v. New York, 71 N.Y. 443, 443 (1877) (providing that "[a] party having a cause of action, in its nature not assignable, cannot, by any agreement before judgment . . . give his attorney any interest therein" and that "[a] settlement between the parties and a release of such a cause of action is a bar to an action

15

commenced thereon, although by agreement between the plaintiff and his attorney at the commencement of the action the latter was to receive a share of any recovery therein for his services, and although the defendant had notice of the agreement, . . . nor will the court intervene and allow the action to be prosecuted for the sole purpose of enabling the attorney to reap the benefits of the agreement")). See also Villani v. Edwards, 554 S.E.2d 184, 185-186 (Ga. Ct. App. 2001) (holding, where a client employed an attorney to represent her in an action arising out of an automobile collision involving certain defendants and the client terminated the attorney prior to settling her claim against the defendants, that "[h]ere there was settlement and voluntary dismissal of [the client's] suit" and "[t]hus, a final disposition of the suit was made discharging, as a matter of law, any possible attorney's lien [the] attorney [] might have been able to establish as to his purported representation of [the client], whether as counsel of record or otherwise"), cert. denied (2002).

Nunn was discharged as Henderson's counsel prior to Henderson's settlement with State Farm. Although Nunn had sent a copy of the Notice of Lien to State Farm, Henderson was not prevented from compromising or releasing his claim against State Farm prior to judgment without consulting Nunn. In addition, as Henderson's action was for personal injuries, under Hanna no obligation in Nunn's favor was created by the transaction against State Farm. Nunn does not cite to authority suggesting that the directives set forth in Hanna have been modified or do not apply under these circumstances or point to evidence that shows collusion as described in Miedreich. We decline to expand upon this State's previous articulations of the boundaries of the reach

16

of an equitable lien for the protection of attorney fees where the proceeds of the compromise have been transferred to the attorney's former client and thus decline to hold that a charging or equitable lien may be enforced against a party other than Nunn's former client under these circumstances where prior to settlement Nunn was no longer counsel for Henderson and was paid its expenses. See Hanna, 5 Ind. App. 163, 31 N.E. at 847-848. We conclude that Nunn may not seek payment of Henderson's attorney fees from State Farm under an equitable attorney fee lien, and State Farm is entitled to summary judgment on this basis.[9]

B.      Quantum Meruit

Further, Nunn may not seek payment of Henderson's attorney fees from State Farm based on a theory of quantum meruit. State Farm was not a party to the Fee Agreement. Nunn does not point to designated evidence that a measurable benefit has been conferred on State Farm under such circumstances that State Farm's failure to pay Henderson's legal fee, whether in addition to or from the amounts paid to Henderson, would be unjust. See Wilson, 952 N.E.2d at 796-797 (finding that the attorney presented no evidence that a measurable benefit had been conferred under such circumstances, where certain insurance proceeds had been retained without the payment of attorney fees, that the failure of the attorney to receive payment of his attorney fees from a hospital would be unjust and that summary judgment on this basis was proper). The designated

---

[9] Nunn cites to Nat. Ins. Assoc. v. Parkview Mem. Hosp., 590 N.E.2d 1141 (Ind. Ct. App. 1992). However, as argued by State Farm, Parkview is distinguishable from this case in part because it addresses the hospital lien statute, which contains language providing hospitals with a specific interest in property otherwise accruing to the patient for the amount of healthcare, and not the attorney lien statute, which does not contain any such language.

evidence shows that any work performed or legal services provided by Nunn was performed or provided for the benefit of its client Henderson and not for the benefit of State Farm and does not show that State Farm was unjustly enriched by the legal services provided by Nunn to Henderson.  See Ritzert Co., Inc. v. United Fidelity Bank, FSB, 935 N.E.2d 756, 760 (Ind. Ct. App. 2010) (noting that to prevail on a claim of unjust enrichment, which is also called quantum meruit, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust, that a party seeking to recover on a theory of quantum meruit must demonstrate that a benefit was rendered to another at the express or implied request of such other party and also demonstrate that to allow the defendant to retain the benefit without paying for it would be unjust) (citations omitted), trans. denied.  Also, Nunn does not point to designated evidence that it relied on State Farm's payment of its former clients' attorney fees under similar circumstances, namely, where Nunn had initiated a lawsuit on behalf of clients against parties insured by State Farm, Nunn was discharged by the clients, and upon subsequent settlement of the claims State Farm made payment to Nunn of the attorney fees owed or allegedly owed by Nunn's former clients.

Based upon the designated evidence, we conclude that the court erred in denying State Farm's motion for summary judgment and failing to enter summary judgment in favor of State Farm and against Nunn.  For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

18

FRIEDLANDER, J., and PYLE, J., concur.