Bruce CARR, Appellant–Defendant,

v.

Joseph PEARMAN, Appellee–Plaintiff.

No. 45A03–0507–CV–323.

Court of Appeals of Indiana.

Jan. 31, 2007.

Bruce Carr, East St. Louis, IL, Appellant pro se.

Kathryn D. Schmidt, Burke Costanza & Cuppy, Merrillville, IN, Attorney for Appellee.

## OPINION ON REHEARING

SHARPNACK, Judge.

Bruce Carr petitions for rehearing on *Carr v. Pearman*, 854 N.E.2d 380 (Ind.Ct. App.2006). In that opinion, we held that the trial court did not abuse its discretion by denying Carr's motion to dismiss or by denying Carr's motions for judgment on the evidence in Carr's action against Joseph Pearman. We based this decision upon a holding that Pearman was a third-party beneficiary of Dave Foelber's contingency agreement with Gerald Sison. On rehearing, Carr argues that Pearman could not be a third-party beneficiary of Foelber's agreement as to Carr because Carr had a separate contingency fee agreement with Gerald Sison. Our review of the record reveals that Carr is correct. As such, we grant rehearing and vacate our original opinion. Nevertheless, we still affirm the trial court's denial of Carr's motion to dismiss and motions for judgment on the evidence.

The relevant facts follow. In February 1996, Pearman's nephew, Gerald Sison, ran off the road in a Chrysler minivan, hit a tree, and was severely injured. Pearman, an attorney, believed that Gerald's injuries were worse than they should have been and talked to Sison's parents, Adonis and Myrna Sison, about investigating the accident. Although Pearman explained to them that such actions were usually taken under a contingency fee agreement, Pearman did not have the Sisons sign a contingency fee agreement.

Pearman told the Sisons to keep a diary of what happened in their family because of Gerald's injury. Pearman also took photographs and videotapes of the van and Gerald's injuries. Pearman bought the van from the Sisons' insurer and put it in a storage facility. Pearman then videotaped the accident site, the tree, the road, and the path of the vehicle and interviewed two witnesses to the accident. Pearman also contacted the National Traffic and Safety Board, the U.S. Department of Transportation, and the Public Citizen Group seeking information on complaints or tests on the seat belts in Chrysler vans. Pearman located a seat belt expert but did not have the funds to hire the expert to inspect the van. Although he called large personal injury law firms looking for another attorney to take the case, none of the law firms were interested in the case. After discussing the case with the Sisons, Pearman and the Sisons decided to dispose of the van to eliminate the storage expenses.

Two years later, the Sisons received recall letters from Chrysler asking that the van be brought in for an inspection of the seat belts. At this point, the Sisons hired Dave Foelber to assist in the case. Gerald signed a contingent fee agreement with Foelber, which also provided: "We also understand that Joseph Pearman has done a good deal of work in preparing this case and we will work with him and you in determining fair compensation for those efforts." Plaintiff's Exhibit 36. Pearman met with Foelber, gave Foelber his file on the accident, and proposed an agreement whereby Pearman would act as co-counsel and receive half of any attorney fees received. Foelber rejected Pearman's proposed agreement and proposed that Pearman receive one-third of the attorney fees. Foelber and Pearman were unable to reach an agreement on fees, and Pearman did not continue as counsel.

Foelber filed a complaint against Daimler Chrysler in state court, but the case was removed to federal court. At that time, Foelber brought Carr into the case. At some point, Carr was appointed to be Gerald's attorney through the probate court and apparently had a separate contingency fee agreement.[1]

---

1. We stated in our original opinion that Carr did not have a separate contingency fee agreement with Gerald. On rehearing, Carr contended that he "did have his own separate contingency agreement with Gerald Sison through Gerald's court appointed guardians." Petition for Reh'g at 4. This contingency fee agreement was not mentioned in Carr's appellant's brief or reply brief. In support of his assertion on rehearing, Carr cites the transcript at p. 551:2–4. This portion of the transcript provides:

 Q. So who was your client in that case?
 A. [by Carr] Gerald Sison, as I was hired by him directly by his guardians.

Transcript at 551. This portion of the transcript does not mention a separate contingency fee agreement between Gerald and Carr.

In fact, the contingency fee agreement between Carr and Gerald was not admitted into evidence at the trial. However, our search of the transcript and exhibits reveals that Carr did have a separate contingency fee agreement with Gerald. Carr testified regarding the contingency fee agreement as follows:

 Q Okay. How did you get involved in this case?
 A Mr. Foelber called me.
 Q Mr. Pearman didn't give you this case?

Carr met with Pearman to discuss the case and Pearman's attorney fees. Pearman said that he wanted one-third of any attorney fees recovered. Carr and Pearman did not reach an agreement regarding attorney fees for Pearman. After a trial, the federal case ended with a hung jury. The parties then settled the case for $2,000,000.00, out of which Foelber and Carr received $800,000.00 in attorney fees.

Pearman filed a complaint against Foelber and Carr. Pearman alleged that "[t]he work that Pearman performed on behalf of the Sisons was significant, and the case against the manufacturer of the Dodge Caravan could not have been successfully maintained without it" and that he was "entitled to the value of the work that he performed." Appellant's Appendix at 34. Pearman requested a judgment in the amount of $266,666.67, which was one-third of the attorney fees recovered by Foelber and Carr.

Carr filed a motion to dismiss, alleging that Pearman's complaint failed to state a claim upon which relief could be granted. Specifically, Carr alleged that Pearman's complaint failed because it did not allege that Carr promised to pay Pearman. Pearman responded by alleging, in part, that his complaint stated a valid claim for quantum meruit. The trial court denied

> A Mr. Pearman didn't give me the case. Mr. Foelber called me and got me, and he was the one I was actually—he would have been my client. Until the guardianship was set up, I was working for Mr. Foelber. I never worked for Mr. Pearman. Pearman never worked for me. I worked for Mr. Foelber. He was my client. I would have gotten any recompense that I was going to get would have been from him. Once the guardianship was set up and once Gerald had authority to hire me, he hired me, and then he was my client.
>
> Q And he hired you pursuant to a written contingency agreement?
>
> A Yes, he did.

Transcript at 553–554. Additionally, Carr testified as follows:

> A [ ] So Mr. Foelber was my attorney—I mean was my client until we—they set up a guardianship for Gerald, my client, and he then hired me as his attorney.
>
> Q And when was that guardianship established?
>
> A I think it was May of—at least my contract came in. He hired me in May of two thousand and—you'll probably have to look at my notes, but I think it was—was it 2001?
>
> Q Okay. But eventually there was a guardianship established for Gerald?
>
> A Yes.
>
> Q Okay. And that Probate Court found that he was not competent?
>
> A Yes.
>
> Q And following the establishment of the—establishment of the guardianship, how did the matter proceed with regard to your representation?
>
> A Well, I basically took over the case, you might say. I mean I drafted a new complaint. I interviewed all the witnesses. I conducted discovery. I responded to all the motions.

*Id.* at 644.

We remind Carr that we generally will not search the record in support of an appellant's arguments in a petition for rehearing. Rather, an appellant should support his arguments by cogent reasoning or risk waiver of his arguments. *See* Ind. Appellate Rule 46(A)(8)(a); *Supervised Estate of Williamson v. Williamson,* 798 N.E.2d 238, 242 (Ind.Ct. App.2003) (holding that the estate waived an argument by failing to support the argument with cogent reasoning).

Despite Carr's lack of adequate citation to authority in the record in his petition for rehearing, our review of the transcript reveals that Foelber brought Carr into the case and that Carr was working for Foelber. At that time, Carr did not have a separate contingency fee agreement with Gerald and would have been entitled to a portion of the attorney fees only through Foelber's contingency fee agreement with the Sisons. At some point, Carr was appointed to be Gerald's attorney through the probate court and apparently had a separate contingency fee agreement. However, that contingency fee agreement and none of its terms are in the record. Foelber has not appealed the verdict and judgment against him. We do not know on what basis Foelber and Carr shared the $800,000 fees.

Carr's motion to dismiss because it found "that the plaintiff's complaint is adequate to state a claim for the reasonable value of services rendered under a theory of quantum meruit" and that "such claim may be maintained against the defendants herein." Appellant's Appendix at 9–10 (citing *Galanis v. Lyons & Truitt,* 715 N.E.2d 858, 863 (Ind.1999)).

At the jury trial, Carr moved for judgment on the evidence after Pearman's case in chief. In the motion, Carr argued that Pearman's claim violated Rule 1.5(c) of the Ind. Rules of Professional Conduct by his failure to have a written contingency fee agreement, that the work done by Pearman was not proportionate to the work done by Carr and Foelber, and that Pearman's other conduct violated the Rules of Professional Conduct. The trial court denied Carr's motion for judgment on the evidence.

The jury returned a verdict against Carr and Foelber for Pearman in the amount of $100,000.00. Carr renewed his motion for judgment on the evidence at the close of the evidence, but the trial court denied the motion. Carr then filed a motion to correct error and a motion for judgment on the evidence, which the trial court also denied. This appeal relates only to the judgment against Carr because Foelber is not appealing the judgment against him. Carr appears to argue that the trial court abused its discretion by denying his motion to dismiss and by denying his motions for judgment on the evidence.[2]

## I.

The first issue is whether the trial court abused its discretion by denying Carr's motion to dismiss. The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is de novo. *Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). We do not defer to the trial court's decision because deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. *Id.*

"A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Northwest Indiana,* 845 N.E.2d 130, 134 (Ind.2006). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." *Id.* "A court should 'accept[ ] as true the facts alleged in the complaint,' and should not only 'consider the pleadings in the light most favorable to the plaintiff,' but

---

**2.** Carr's "Issue Presented for Review" is "Whether, as a matter of law, Pearman's claim against Carr failed because Pearman had no written fee agreement to represent Carr's client, Gerald Sison, in Gerald's personal injury claim against Daimler Chrysler?" Appellant's Brief at 5. Carr also states that "[t]he issue presented for review came before the trial court on Carr's Ind. Trial Rule 12(b)(6); Rule 50; and Rule 59 motions." *Id.* However, Carr presents no further mention of how his issue for review was presented to the trial court. Specifically, Carr presents no standard of review and fails to cite to the locations in the record where his arguments were presented to the trial court. We remind Carr that Ind. Appellate Rule 46(A)(8)(b) provides: "The argument must include for each issue a concise statement of the applicable standard of review.... In addition, the argument must include a brief statement of the procedural and substantive facts necessary for consideration of the issues presented on appeal, including a statement of how the issues relevant to the appeal were raised and resolved by any ... trial court." Despite Carr's failure to follow the appellate rules, we will attempt to address his arguments.

also 'draw every reasonable inference in favor of [the non-moving] party.'" *Id.* (internal citations omitted).

Carr filed a motion to dismiss, alleging that Pearman's complaint failed to state a claim upon which relief could be granted. Specifically, Carr alleged that Pearman's complaint failed because it did not allege that Carr promised to pay Pearman. Pearman responded by alleging, in part, that his complaint stated a valid claim for quantum meruit. The trial court denied Carr's motion to dismiss because it found that Pearman's complaint stated a claim for quantum meruit.

■ On appeal, Carr first argues that Pearman's claim was based upon "an implied contract for a contingency fee in a personal injury case" and that an agreement for a contingency fee can never be implied. Appellant's Brief at 10. We acknowledge that an agreement for a contingency fee cannot be implied. *See Valparaiso Technical Institute, Inc. v. Porter County Treasurer,* 676 N.E.2d 416, 420 (Ind.Ct.App.1997) (holding that contingent fee agreements will not be implied in law even when a contracting party had agreed to pay reasonable attorney's fees upon default), *reh'g denied.* However, in ruling on the motion to dismiss, the trial court found that Pearman's claim was based upon quantum meruit, not an implied contingency fee agreement.

■ Carr also argues that the Sisons did not have an agreement to pay Pearman for his work. In general, "a party seeking to recover upon a theory of quantum meruit or implied contract must demonstrate that a benefit was rendered to another at the express or implied request of such other party." *Timothy F. Kelly and Associates v. Illinois Farmers Ins. Co.,* 640 N.E.2d 82, 85–86 (Ind.Ct.App.1994). "[A] party who has not expressly or impliedly requested the benefit is under no obli-

gation to pay for the benefit." *Dominiack Mechanical, Inc. v. Dunbar,* 757 N.E.2d 186, 192 (Ind.Ct.App.2001) (quoting *Garage Doors of Indianapolis, Inc. v. Morton,* 682 N.E.2d 1296, 1303 (Ind.Ct.App. 1997), *trans. denied* ). However, Pearman's complaint indicates that he was acting as the Sisons' attorney and did a significant amount of work for them. When Gerald signed a contingent fee agreement with Foelber, Foelber included the following in the agreement: "We also understand that Joseph Pearman has done a good deal of work in preparing this case and we will work with him and you in determining fair compensation for those efforts." Appellant's Appendix at 37. Pearman's complaint alleged that his work on behalf of the Sisons was significant and that the case against Daimler Chrysler could not have been successfully maintained without it. We conclude that Pearman's complaint is sufficient to allege at least an implied agreement with the Sisons.

Carr also contends that the "implied contingency fee agreement" was with Gerald's parents and that Carr, as a third party, is not bound by such an implied agreement. In ruling on the motion, the trial court relied upon *Galanis v. Lyons & Truitt,* 715 N.E.2d 858 (Ind.1999), in which the Indiana Supreme Court considered competing contingency fee agreements from a client's prior and current attorneys. In *Galanis,* the client retained Lyons & Truitt ("Lyons") to represent her in a personal injury action under a written one-third contingent fee arrangement. 715 N.E.2d at 860. After her attorney at Lyons was appointed to a trial court, the client then retained Galanis as her attorney. *Id.* The client signed another contingency fee agreement with Galanis, which provided that Galanis would receive forty percent of the gross amount recovered if

the case settled or went to trial plus an additional ten percent if the case was appealed. *Id.*

The jury awarded $250,000 to the client, and the case settled for $200,000. *Id.* Lyons requested one-third of one-third of the recovery or $22,200, but the parties were unable to reach an agreement. *Id.* Lyons filed a complaint against the client, and the client cross claimed against Galanis. *Id.* The trial court held that Lyons was entitled to a reasonable fee and that Galanis was responsible for paying the fee. *Id.*

On appeal, the Indiana Supreme Court noted that "[a] client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." *Id.* at 861. An agreement "calling for a reasonable method of compensating a discharged lawyer may be enforceable according to its terms." *Id.* The conventional rule is "[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee." *Id.* (quoting 7 Am.Jur.2d Attorneys at Law § 181 (1997)). "Quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the 'value of work performed or material furnished if used' by another and if valuable." *Id.* (quoting 17A C.J.S. Contracts § 440 at 553 (1963)).

The court noted that determining a proper amount of attorney fees for the predecessor attorney is "ultimately a factual determination for the trial court." *Id.* at 862. "[T]he value of a discharged lawyer's work on a case is not always equal to a standard rate multiplied by the number of hours of work on the case." *Id.* "In

the context of valuing a terminated predecessor's services, as is generally true, '[i]n determining the reasonable value of the legal services rendered, the time expended by the attorney alone is not a controlling factor. Among other things, consideration may be given to the general quality of the effort expended by the attorney.'" *Id.* (quoting *Kizer v. Davis*, 174 Ind.App. 559, 569 n. 9, 369 N.E.2d 439, 446 n. 9 (1977)). The court then held that:

> [O]nly one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed [and] . . . that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question. . . .

*Id.* at 863 (quoting *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La. 1979)). Thus, the attorney fees "should be apportioned according to the respective services and contributions of the lawyers based on the work each performed." *Id.*

We conclude that *Galanis* is instructive and provides guidance on Pearman's quantum meruit claim. *Galanis* recognized that a replaced attorney has a right to compensation for his or her work and that, where a contingency fee is involved, the compensation comes from an apportionment of the contingency fee. Based upon *Galanis*, we conclude that, despite the lack of an agreement between Pearman and Carr, Pearman stated a set of circumstances under which he could be entitled to relief under quantum meruit principles, and the trial court properly denied Carr's motion to dismiss. *See, e.g., Galanis*, 715 N.E.2d at 861–863.

## II.

The next issue is whether the trial court erred by denying Carr's mo-

tions for judgment on the evidence. The standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision. *Kirchoff v. Selby*, 703 N.E.2d 644, 648 (Ind.1998). Judgment on the evidence is proper only "where all or some of the issues ... are not supported by sufficient evidence." *Id.* (citing Ind. Trial Rule 50). The court looks only to the evidence and the reasonable inferences drawn most favorable to the nonmoving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.*

At the jury trial, Carr moved for judgment on the evidence after Pearman's case in chief. In the motion, Carr argued that Pearman's claim violated Rule 1.5(c) of the Ind. Rules of Professional Conduct by his failure to have a written contingency fee agreement, that the work done by Pearman was not proportionate to the work done by Carr and Foelber, and that Pearman's other conduct violated the Rules of Professional Conduct. The trial court denied Carr's motion for judgment on the evidence.

▉ On appeal, Carr seems to argue that Pearman's claim should have failed because: (A) Pearman failed to establish an agreement with the Sisons for the payment of his attorney fees; (B) Pearman failed to present evidence regarding the

reasonable value of his work; and (C) the claim violated Indiana's public policy.[3]

## A. *Agreement with the Sisons.*

▉ Carr seems to argue that Pearman did not have an agreement with the Sisons for the payment of his attorney fees. As noted above, "a party seeking to recover upon a theory of quantum meruit or implied contract must demonstrate that a benefit was rendered to another at the express or implied request of such other party." *Timothy F. Kelly and Associates*, 640 N.E.2d at 85–86. "[A] party who has not expressly or impliedly requested the benefit is under no obligation to pay for the benefit." *Dominiack Mechanical*, 757 N.E.2d at 192.

At the trial, Pearman testified that he had done legal work for his wife's family in the past. He never had a written agreement with them, and he was sometimes paid. He was generally paid if the work was "not relatively simple, and it took a little bit of time, and there was some complexity to it...." Appellee's Appendix at 66. Additionally, Pearman testified:

Q Did you discuss attorney's fees?

A Yes. I—yes.

Q What did you say?

A I explained to them that if this—if this accident, if it appeared that someone or—more than someone. If it appeared that someone may have done or

---

**3.** Carr also argues that "Pearman's implied contract claim against Carr for attorney fees failed as a matter of law because Gerald was a minor in 1996 when Pearman performed his services" because contracts entered into with minors are voidable. Appellant's Brief at 14. Pearman argues that this issue is waived because Carr did not raise this issue before the trial court. In his reply brief, Carr contends that he raised this issue on pages 199, 552, 643, 649, 663, 673, 730–731 of the Transcript and in the motion to correct error and for judgment on the evidence. Our re-

view of these portions of the record fails to reveal an argument to the trial court that Pearman's claim failed because Gerald was a minor at the time of Pearman's services. Consequently, we conclude that Carr has waived review of this argument. *See, e.g., Mid–States General & Mechanical Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 438 (Ind.Ct.App.2004) ("An appellant who presents an issue for the first time on appeal waives the issue for purposes of appellate review.").

failed to do something that caused Gerald to be hurt this badly, that that would be a case, a personal injury case. And that if—that if we could get to that point, if we could make that determination, that a personal injury case, the typical way that it's paid is on a contingency, and the attorney receives a percentage of the recovery, typically one-third. And, well, I—and I explained—I explained that to them.

Q Did you get them to sign a formal agreement, contingency agreement, with you?

A No.

Appellee's Appendix at 33; Transcript at 72.

Myra Sison testified:

Q Did you ever agree to pay Joe Pearman one-third of any recovery he got in the case on behalf of your son?

A No. We didn't discuss anything about that.

Q You didn't discuss it at all at the hospital?

A No.

Q Did you ever hire Joe Pearman to be your lawyer in Gerald's case?

A We were in quite a shock and emotional state at that time. As far as hiring anybody or what, was the last thing—or was not in our mind at all. It was out of his concern for what was going on that he did say he was going to look into something.

Transcript at 588.

Looking, as we must, only to the evidence and the reasonable inferences drawn most favorable to Pearman, we conclude that the jury could have found an implied agreement between Pearman and the Sisons. Pearman was generally paid by the family for complex matters. Pearman explained to the Sisons that personal injury cases are normally taken on a contingency fee basis. Pearman then did a substantial amount of work on the case. Evidence of an implied agreement between Pearman and the Sisons for payment for Pearman's work was presented, and the trial court properly denied Carr's motion for judgment on the evidence on this basis.

### B. *Reasonable Value of Work.*

 Carr contends that Pearman's claim should have failed because Pearman refused to provide an "objective basis to determine a fee for his services other than a percentage of the recovery." Appellant's Brief at 11–12. According to Carr, Pearman should have cited traditional factors, such as his experience, his ability, his reputation, the nature of his employment, his responsibility, his results, his hourly rate, and his hours worked. In *Galanis*, the Indiana Supreme Court recognized that "[i]n the context of valuing a terminated predecessor's services, as is generally true, '[i]n determining the reasonable value of the legal services rendered, the time expended by the attorney alone is not a controlling factor. Among other things, consideration may be given to the general quality of the effort expended by the attorney.'" *Galanis*, 715 N.E.2d at 862 (quoting *Kizer*, 174 Ind.App. at 569 n. 9, 369 N.E.2d at 446 n. 9). Further, although the adherence to time charges is not required, a trial court would be within its discretion to do so in arriving at a reasonable fee. *Id.* at 863.

Pursuant to *Galanis*, Pearman's time expended on Gerald's case is not the only consideration in determining the value of his services. In ruling on Carr's motions for judgment on the evidence, the trial court could grant the motions only if no substantial evidence on this issue existed. Pearman testified regarding his work on Gerald's case, which included taking videos and photographs of Gerald's injuries, the

van, and the accident site, interviewing witnesses, and contacting governmental agencies, experts, and prospective personal injury law firms. Pearman's expert testified that without Pearman's work "there would not have been a case." Appellant's Appendix at 75. Pearman presented evidence relevant to the value of his services, and it was for the jury to determine the value of his services. The trial court properly denied Carr's motions for judgment on the evidence on this basis.

### C. *Public Policy.*

■ Carr argues that Pearman violated Indiana's public policy and various Rules of Professional Conduct by: (1) demanding a contingency fee without a written fee agreement; (2) demanding $266,666.67 in attorney fees without any traditional reasonable basis for the fee; (3) demanding an attorney fee disproportionate to his work and responsibility; (4) demanding an attorney fee from a case in which he was a necessary witness; (5) demanding an attorney fee for a case he did nothing on for over five years; (6) demanding an attorney fee for a case he was not competent to handle; (7) demanding an attorney fee for a case he solicited in a hospital; and (8) demanding that Carr pay him one-third or one-half of Carr's attorney fees. According to Carr, "no court should make it financially profitable for attorneys to offend the Professional Rules of Conduct." Appellant's Brief at 17.

According to Carr, Pearman's claim is void due to violations of public policy, and he cites *Major v. OEC–Diasonics, Inc.*, 743 N.E.2d 276, 278 (Ind.Ct.App.2001), *trans. denied,* for the proposition that an oral contingency fee agreement is illegal. Appellant's Reply Brief at 8–9. In *Major,* Major hired Robert Mysliwiec to represent him in a breach of contract case. In 1986,

the parties orally agreed to a one-third contingency fee, which was modified to twenty-five percent in 1987 and increased to thirty percent in 1991. 743 N.E.2d at 278–279. Each of the modifications was also oral. *Id.* After a jury trial, Major was awarded $3 million in damages, but Major was unhappy with the judgment amount. *Id.* at 279. Major sought to bring a legal malpractice action, and Mysliwiec's firm filed a notice of intent to hold an attorney's lien. *Id.* After a hearing on the attorney's lien issue, the trial court awarded Mysliwiec's firm $970,261.75 plus interest based upon quantum meruit principles. *Id.* at 281. The attorney fee award included a $650,000 bonus over and above the amount based upon the firm's hourly rate. *Id.*

■ On appeal, we noted that quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of work performed for another, "if valuable." *Id.* at 281–282 (citing *Galanis,* 715 N.E.2d at 861). "In the case of attorney and client, the value is that of 'the benefit the client received' from the attorney's work." *Id.* at 282. "If the attorney 'is not compensated' for the work performed on the client's case that resulted in a recovery for the client, the client is 'unjustly enriched.'" *Id.* "Therefore, there must be a determination of the dollar value of the attorney's services 'to offset the unjust enrichment' and 'based on the value conferred on the client.'" *Id.*

Major argued that Mysliwiec was not entitled to a quantum meruit recovery because he had violated Rule 1.5(c) of the Professional Rules of Conduct, which requires contingency fee agreements to be in writing, and had violated Rule 1.8(a) of the Professional Rules of Conduct by accepting $21,000 from Major. *Id.* at 282. We disagreed and held, in part:

[O]ur supreme court has expressly rejected the bright line prohibition expressed in Major's assertion. In *City of Rochester v. Campbell*, 184 Ind. 421, 111 N.E. 420, 421 (1916), it held that when a contract for legal services was "invalid" (because it linked the fee for legal services to a recovery amount) but "not illegal either on account of the nature of the service or the circumstances under which it is rendered, the attorney may recover on a quantum meruit notwithstanding the invalidity of the contract under which the services were rendered." 111 N.E. at 421.

*Id.* Thus, Mysliwiec was entitled to a quantum meruit recovery. Additionally, we held that the trial court did not err by awarding fees in excess of the hourly rate calculation. *Id.*

*Major* stands for the proposition that an attorney may be entitled to quantum meruit recovery for his or her work despite the fact that the attorney has violated the Rules of Professional Conduct by failing to obtain a written contingency fee agreement.[4] Nowhere does *Major* hold that an oral contingency fee agreement, which violates the Rules of Professional Conduct, is illegal or void. Rather, the majority in *Major* holds that such an agreement is "invalid" but that the attorney may recover under quantum meruit. *Major*, 743 N.E.2d at 282. Carr cites no relevant authority for the proposition that such alleged violations of the Rules of Professional Conduct mandate that Pearman receive no compensation under quantum meruit. We conclude that the trial court did not err by denying Carr's motion for judgment on the evidence on this basis.

4. Carr attempts to distinguish *Major* by arguing that the first oral contingency fee agreement in *Major* was made in 1986, prior to the 1987 effective date of Rule 1.5 of the Rules of

For the foregoing reasons, we grant Carr's petition for rehearing, vacate our original opinion, and affirm the judgment in favor of Pearman.

Affirmed.

NAJAM and ROBB, JJ., concur.

Professional Conduct. However, the majority in *Major* did not differentiate between pre–1987 and post–1987 oral contingency fee agreements.