## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 15 2019, 8:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| Curtis Pearman<br>Naples, Florida | Crystal G. Rowe<br>New Albany, Indiana |
| | Michael E. Brown<br>Indianapolis, Indiana |

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Curtis Pearman,<br>*Appellant-Counterclaim Plaintiff,*<br><br>v.<br><br>Andrew Alexander Szakaly,<br>*Appellee-Counterclaim Defendant.* | May 15, 2019<br><br>Court of Appeals Case No.<br>18A-PL-2074<br><br>Appeal from the Jennings Circuit Court<br><br>The Honorable Timothy B. Day, Judge<br><br>Trial Court Cause No.<br>40C01-1106-PL-127 |

**Tavitas, Judge.**

## Case Summary

Curtis Pearman, pro se, as successor-in-interest to Norris Avenue Professional Building Partnership ("Norris"),[1] appeals the judgment of the trial court in favor of Andrew Alexander Szakaly. Specifically, Pearman appeals the trial court's order finding that Szakaly had an attorney lien in the amount of $10,720.00 and the trial court's judgment on the evidence in favor of Szakaly regarding Pearman's legal malpractice claim. We affirm.

## Issues

Pearman states several issues for our review. After our review of the record, we consolidate and rephrase the relevant issues as follows:

    I.    Whether the trial court erred in finding that Szakaly had an attorney lien and was owed fees under a theory of quantum meruit.

    II.    Whether the trial court erred in granting Szakaly's motion for judgment on the evidence with regard to Pearman's legal malpractice counterclaim against Szakaly.

## Facts

The focus of this appeal is Szakaly's legal representation of Norris. First, we pause to note that the parties and trial court have made the record difficult to understand. For example, there were several motions that the trial court failed

---

[1] The trial court ruled that Pearman was "the appropriate party in interest." Tr. p. 31.

to address. Secondly, in a maneuver we do not understand, Szakaly failed to withdraw his appearance for over one year after he was terminated by Norris. Instead, other attorneys entered appearances on behalf of Norris and did not ask Szakaly to withdraw. Third, the procedural posture gives us pause because Pearman filed a counterclaim to Szakaly's attorney lien. We will, however, focus only on the issues and relevant facts[2] raised by the parties on appeal.

[4]     Szakaly was hired to represent Norris in a lawsuit against Coordinated Health, LLC ("Coordinated Health") due to a landlord-tenant dispute. The parties had a fee agreement, whereby Szakaly would be paid twenty percent of the final judgment recovered plus $100.00 per hour for his legal services. Szakaly filed the complaint against Coordinated Health on June 7, 2011. Szakaly remained active in the litigation and filed a summary judgment motion on behalf of Norris on February 17, 2012 ("Szakaly's Summary Judgment Motion"), which was denied. Later, the relationship broke down when Szakaly failed to file a memorandum in May 2014 requesting judgment in Norris' favor. As a result of failure to file the memorandum, the trial court entered judgment in favor of Coordinated Health and against Norris. Thereafter, Norris hired attorneys from Clapp Law, who filed their appearance on June 4, 2014. Szakaly was still listed as an attorney of record in the lawsuit. Clapp Law represented Norris on appeal, and according to the record, it does not appear that Szakaly was

---

[2] There are many facts the parties discuss in their briefs; however, we focus only on specific relevant facts in this opinion.

involved in the appeal. While the appeal process was ongoing, Pat Brown, Pearman's then-partner at Norris, sent Szakaly an email stating that Szakaly's legal representation was "no longer required." Appellant's App. Vol. III p. 150.

[5] On appeal, in *Norris Ave. Professional Bldg. Partnership v. Coordinated Health, LLC,* 28 N.E.3d 296, 298 (Ind. Ct. App. 2015), *trans. denied,* a panel of this court reversed the trial court's judgment in favor of Coordinated Health on March 25, 2015. The *Norris Ave.* panel determined that, although Szakaly failed to file the subsequent memorandum with the trial court, Norris did not fail to prove it was entitled to judgment merely because it neglected to file a brief, which would have been "redundant" to Szakaly's Summary Judgment Motion. *Norris Ave.,* 28 N.E.3d at 300. Accordingly, the trial court was ordered to enter judgment on behalf of Norris. *See id.* at 303.

[6] After Coordinated Health's petition for transfer to our Supreme Court was denied, the trial court entered judgment in favor of Norris. That same day, Norris, through its attorney at Clapp Law, filed a motion for a hearing on the issue of damages, as that was the only issue left outstanding after the appeal.[3]

[7] On August 7, 2015, Szakaly filed his notice of attorney's lien and filed an amended notice on August 31, 2015. Despite the August 2014 email

---

[3] Again, Szakaly was still listed as Norris' attorney on the CCS, but was already terminated.

terminating his legal services, Szakaly emailed Clapp Law[4] on August 27, 2015, stating, "I've remained counsel of record for Norris Ave. during this entire lawsuit." Appellant's Supp. App. Vol. II p. 66. On September 18, 2015, Szakaly continued to act as though he was Norris' attorney and contacted all other counsel of record, including Clapp, to determine damages recoverable pursuant to the trial court's order.

[8]     Displeased with Szakaly's continued involvement on behalf of Norris, on October 9, 2015, Brown sent Szakaly another email stating: "[a]s contained in the e-mail[] sent to you in [2014] I restate that your services are no longer needed in the matter of Norris Ave. vs Coordinated Health. Please withdraw." Id. at 70. That day, Szakaly replied that he had "no record of the [2014] email to which you refer. Please send a copy."[5] Id. Brown responded, "[i]rregardless [sic], you [sic] once again fired!" Id. at 72.

[9]     On October 21, 2015, Norris, by counsel at Clapp Law, and Coordinated Health filed a stipulated dismissal after settling the issue of damages for $150,000.00. On October 22, 2015, Szakaly filed, and the trial court granted Szakaly's motion to withdraw his appearance. The same day, the trial court issued a dismissal of the matter between Coordinated Health and Norris, but

---

[4] The addressee on the email is "Julie Hunt." Appellant's Supp. App. Vol. II p. 66. We are unsure of Hunt's relationship in this lawsuit.

[5] In the initial email from Brown to Szakaly, Brown stated that the termination email was sent in 2012, which may have contributed to Szakaly's confusion and subsequent response that he did not have a 2012 email. Brown later testified that 2012 was a scrivener's error, and the email was sent in 2014.

ordered that "the case shall remain open until the attorney lien(s) filed by Andrew Szakaly are resolved." *Id.* at 74.

[10] On August 29, 2017, Pearman, pro se, filed a counterclaim against Szakaly for legal malpractice, breach of contract, and negligent misrepresentation. A few days later, on August 31, 2017, Pearman filed a motion to dismiss Szakaly's attorney lien. On November 22, 2017, Szakaly filed his motion to dismiss Norris' counterclaim and attached an exhibit, which was the August 2, 2014, termination email.[6] Pearman filed a motion for default judgment and a response to Szakaly's motion to dismiss on December 6, 2017. On December 12, 2017, Pearman served requests for admissions on Szakaly.[7] On December 26, 2017, Pearman filed a motion for leave to amend his counterclaim to add a claim for tortious interference.

[11] On May 8, 2018, an evidentiary hearing was held on the attorney lien issue. On May 24, 2018, the trial court entered an order in favor of Szakaly finding: "Szakaly has a valid lien against Pearman for fair and reasonable compensation pursuant to the equitable theory of quantum meruit" in the amount of $10,720.00.[8] Appellee's App. Vol. II p. 3. On August 9, 2018, the trial court

---

[6] This is relevant because, as we will discuss further below, Pearman contends that the attached exhibits turned Szakaly's motion to dismiss into a motion for summary judgment. Regardless, for clarity, we will continue to refer to this filing as the "motion to dismiss."

[7] Pearman also served an earlier set of requests for admissions on Szakaly on August 28, 2017, according to the requests' certificate of service, which we will discuss below.

[8] The trial court determined that Szakaly was owed a total of $13,020.00 but deducted the monies that were already paid to Szakaly by Norris.

held a hearing on the counterclaims, and Szakaly moved for judgment on the evidence. The trial court entered an order on August 27, 2018, granting judgment in favor of Szakaly, stating that "Pearman presented no evidence as to malpractice on the part of [Szakaly] or damages sustained." *Id*. at 6. Pearman filed a motion to correct error on June 4, 2018, which the trial court denied on June 15, 2018. Pearman now appeals.

## Analysis

### I. Attorney Liens

[12] Pearman contends that Szakaly should not have been granted judgment on his attorney liens, in part, because they were untimely filed. It appears that Pearman is appealing the trial court's findings and conclusions. Because the trial court entered findings of fact and conclusions of law, "[w]e will set aside findings of fact and conclusions of law only if they are clearly erroneous. . . ." *Sapp v. Flagstar Bank, FSB,* 12 N.E.3d 913, 923 (Ind. Ct. App. 2014), *trans denied,* (citations omitted). We give due regard to the trial court to determine credibility of the witnesses. *See id.* "A judgment is clearly erroneous when the record contains no evidence supporting the findings, the findings fail to support the judgment, or when the trial court applies an incorrect legal standard to properly found facts." *Id.*

[13] Attorneys have several types of attorney liens that they can file. First is the statutory lien. "An attorney practicing law in a court of record in Indiana may hold a lien for the attorney's fees on a judgment rendered in favor of a person

employing the attorney to obtain the judgment." Ind. Code § 33-43-4-1. "Indiana courts have also recognized liens which arise in equity to protect attorney fees." *State Farm Mut. Auto. Ins. Co. v. Ken Nunn Law Office,* 977 N.E.2d 971, 976 (Ind. Ct. App. 2012).

[14] The two types of equitable liens are retaining liens and charging liens. A retaining lien "is the right of the attorney to retain possession of a client's documents, money, or other property which comes into the hands of the attorney professionally, until a general balance due [to] him for professional services is paid." *Id.* (quotations omitted). On the other hand, a charging lien, is "the equitable right of attorneys to have the fees and costs due [to] them for services in a suit secured out of the judgment or recovery in that particular suit." *Id.* at 977. The distinction between the two types of equitable liens mainly centers on the attorney's possession of a client's property.

[15] In the present case, Szakaly filed an attorney lien on August 7, 2015. Although the document did not specify the type of attorney lien, Szakaly cited the statutes for an attorney lien. As such, we assume that the August 7th filing was a statutory attorney lien. Szakaly then amended his filing on August 31, 2015. Again, he did not specify the type of attorney lien that he was filing. In this filing, however, he cited to both the statutes providing for a statutory attorney lien and a case dealing with equitable principles of quantum meruit.[9]

---

[9] Szakaly filed a second amendment on October 20, 2015, which the parties have not provided to us.

[16] The trial court also did not specify the type of attorney lien it was considering. The trial court ordered:

> This Court having heard testimony and considered evidentiary matters now finds that Szakaly has a valid lien against Pearman for fair and reasonable compensation pursuant to the equitable theory of quantum meruit. Because Szakaly's employment by Norris ended on August 2, 2014 his right to a contingency fee was extinguished at that point. He nonetheless provided valuable services to Norris between March 2011 and August 2014 which enhanced the ability of Norris to recover $150,000 in this matter.

Appellee's App. p. 3. Based on the trial court's language, we conclude that Szakaly was granted a charging lien based on the equitable theory of quantum meruit.

[17] On appeal, Pearman conflates the standards for the different types of liens. *See State Farm,* 977 N.E.2d at 977 (noting that "Indiana is among the states that has recognized a charging lien separate from the attorney lien statute"). For example, while arguing that liens must be filed after final judgment, Pearman cites cases finding only that statutory liens were untimely filed. We agree that statutory liens must be filed after final judgment. *See Clem v. Watts*, 27 N.E.3d 789 (Ind. Ct. App. 2015). Pearman has cited no relevant authority, however, that a charging lien must be filed after final judgment, and an early Supreme Court case would imply otherwise. *See Koons v. Beach*, 46 N.E. 587, 587 (Ind. 1897), *reh'g denied*. The same is true of Pearman's argument that charging liens cannot be applied to settlements. Pearman cites no relevant authority stating that a charging lien cannot apply to a settlement. *See* Benjamin Watson, THE

LAW OF INDIANA RELATING TO STATUTORY LIENS (W.H. Anderson 1996) (summarizing Indiana law to conclude that an attorney may have an equitable lien on the judgment *and* "funds in court recovered through his exertions"). To the extent that Pearman argues that charging liens cannot be applied to settlements, his argument is waived for failure to present cogent arguments on appeal. *See* Ind. Appellate Rule 46(A)(8)(a).

[18] Because we conclude that an equitable lien was at issue, the requirements of a statutory attorney lien did not need to be met. *See In re Estate of Johnson,* 855 N.E.2d 686, 700 (Ind. Ct. App. 2006) (concluding that "our review of the record indicates that the trial court plainly acknowledged that Neiswinger's lien was not being granted by statutory allowance, but rather by the equitable principle of quantum meruit. . . . In light of this equitable doctrine, we conclude that no statutory basis is mandatory for Neiswinger to be apportioned part of the fee in this case"), *trans. denied.* We, therefore, turn our attention to whether Szakaly was entitled his fees under the theory of quantum meruit.

[19] Initially, the parties entered into an agreement, whereby Szakaly was entitled to:

> 20% of the gross amount of any monies recovered from any settlement or judgment against persons found liable to client. Client shall owe said fee only if monies are recovered. Regardless of whether any monies are recovered, Client shall pay Attorney for all time spent in this matter at the rate of $100 per hour, plus mileage as required. . . .

Defendant's Ex. B. Szakaly, however, was terminated prior to the end of the case. Our Supreme Court has held that terminated attorneys may be entitled to fees under a theory of quantum meruit. *See Galanis*, 715 N.E.2d at 861 (holding that "an attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee").

[20] In order to prove that an attorney is entitled to fees under a theory of quantum meruit, the attorney must demonstrate "[(1)] that a benefit was rendered to another [(2)] at the express and implied request of such other party." *Carr v. Pearman,* 860 N.E.2d 863, 869 (Ind. Ct. App. 2007) (citations omitted), *trans. denied.* Even when an attorney's work is not to the standard that we would prefer, we have previously noted that "an attorney may be entitled to quantum meruit recovery for his or her work despite the fact that the attorney has violated the Rules of Professional Conduct by failing to obtain a written contingency fee agreement." *Id.* at 874. "If the attorney is not compensated for the work performed on the client's case that resulted in a recovery for the client, the client is unjustly enriched." *Major v. OEC-Diasonics, Inc.,* 743 N.E.2d 276, 282 (Ind. Ct. App. 2001), *trans. denied.* "Arriving at the proper number to place on the predecessor's services is ultimately a factual determination for the trial court." *Galanis,* 715 N.E.2d at 862.

[21] Based on our review of the record, Szakaly met his burden to establish that he was entitled to fees under a theory of quantum meruit. Norris expressly hired

Szakaly to represent Norris in its legal dispute against Coordinated Health. In doing so, Szakaly filed Szakaly's Summary Judgment Motion, which, after a convoluted path to a panel of this court, ultimately led to judgment in Norris' favor. Thereafter, judgment in Norris' favor led to a $150,000.00 settlement on the issue of damages. The trial court found, and we cannot disagree, that Szakaly rendered a valuable benefit to Norris and Pearman, despite Szakaly's errors during his representation of Norris. *See Carr,* 860 N.E.2d at 873 ("In the case of attorney and client, the value is that of 'the benefit the client received' from the attorney's work. If the attorney is not compensated for the work performed on the client's case that resulted in a recovery for the client, the client is unjustly enriched.") (quotations omitted). Accordingly, "there must be a determination of the dollar value of the attorney's services to offset the unjust enrichment and based on the value conferred on the client." *Id.*

[22] Szakaly presented evidence that he logged 43.4 hours total on the Norris and Coordinated Health matter prior to his 2014 termination, and he presented evidence regarding his traditional billable rate of $300.00 per hour. This work logged by Szakaly included work done on Szakaly's Summary Judgment Motion, which ultimately resulted in judgment for Norris. Pearman does not contend that this amount is necessarily unreasonable on appeal. We cannot say, therefore, that the trial court's finding that Szakaly was entitled to an equitable attorney lien under a theory of quantum meruit was clearly erroneous. *See Kelly v. Smith,* 611 N.E.2d 118, 122 (Ind. 1993) (finding that a law firm held "an attorney's lien for the *quantum meruit* value as of the dissolution date

against matters which left the Firm" when one of the law firm partners left to another firm, taking clients with him) (emphasis supplied).[10]

## II. *Pearman's Counterclaim*

[23] Pearman contends that the trial court erred in granting Szakaly's judgment on the evidence with regard to Pearman's legal malpractice counterclaim. Generally, we review "the trial court's issuance of judgment on the evidence by applying the same standard that the trial court uses, looking only to the evidence and reasonable inferences most favorable to the non-moving party." *Purcell v. Old Nat. Bank,* 972 N.E.2d 835, 839 (Ind. 2012). "Judgment on the evidence is appropriate only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim." *Harrison County Sheriff's Dept. v. Ayers,* 70 N.E.3d 414, 417 (Ind. Ct. App. 2017), *trans. denied* (citations omitted). Here, however, Pearman's arguments do not directly challenge the sufficiency of the evidence.[11] Instead, Pearman focuses

---

[10] During this appeal, Szakaly attempted to initiate a sheriff's sale of the Norris property. We note that,

> an attorney's lien is not a typical lien. The attorney is regarded as an assignee of the judgment produced by his efforts. 7A C.J.S. ATTORNEY & CLIENT § 359 (1980). The attorney's lien is considered an assignment of the judgment. William F. Harvey describes the attorney's lien as a "law-created assignment of the judgment." 4 INDIANA PRACTICE § 67.3 (1991). The attorney's lien is a partial assignment of the judgment from the client to the attorney. Thus, when Stroup obtained his attorney's fee lien on O'Hannes' money judgment, he essentially received a partial assignment of the judgment itself.

*Stroup v. Klump-O''Hannes*, 749 N.E.2d 622, 625 (Ind. Ct. App. 2001).

[11] Pearman does make some evidentiary arguments with regard to his judicial estoppel argument, which we address below.

on certain evidentiary and discovery issues that Pearman argues would have led to a result in his favor.

[24] First, Pearman argues that,

> The facts show that (i) Szakaly didn't answer the Counterclaim, (ii) he filed a paper labeled as a T.R. 12 Motion that included two exhibits (iii) the inclusion of exhibits caused Szakaly's Motion to be a T.R. 56 motion under T.R. 12(C)[], (iv) a T.R. 56 motion is not an acceptable answer to a pleading[.]

Appellant's Br. p. 3. Second, Pearman argues that the trial court erred in "declining to accept into evidence two sets of request[s] for admissions when the facts show that Szakaly acknowledged receiving, but refus[ed] to answer" the requests for admissions, which would have proven many aspects of Pearman's case. *Id.* Finally, Pearman argues that Szakaly was "judicially estopped" from making contradictory arguments at the bifurcated hearings regarding his termination date. We will address each in turn below.

### i.    *Szakaly's responsive pleading*

[25] First, Pearman contends that the trial court erred in failing to grant default judgment. A trial court's ruling on a motion for default judgment is entitled to deference and will be reviewed for an abuse of discretion. *See Allstate Ins. Co. v. Watson,* 747 N.E.2d 545, 547 (Ind. 2001) (citations omitted). The trial court's discretion "should be exercised in light of the disfavor in which default judgments are held." *Id.* Under Indiana Trial Rule 55(A), "When a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted by the court." "It is an extreme remedy and is available only where that party fails to defend or prosecute a suit. It is not a trap to be set by counsel to catch unsuspecting litigants." *Id.* (internal quotations omitted).

[26] Pearman argues that Szakaly failed to respond to his counterclaim.[12] Although Szakaly filed a motion to dismiss the counterclaim, Pearman contends that the motion was converted to a motion for summary judgment and that a motion for summary judgment is not a proper responsive document. Accordingly, Pearman argues the trial court should have granted his motion for default judgment because Szakaly failed to file a response to his counterclaim.

[27] Generally, a motion to dismiss under Indiana Trial Rule 12(B)(6) is a proper responsive pleading. *See Morton-Finney v. Gilbert,* 646 N.E.2d 1387, 1388 (Ind. Ct. App. 1995). Indiana Trial Rule 12(B) states, with regard to motions to dismiss:

---

[12] It does not appear the trial court ruled on the motion to dismiss. While a hearing was held on February 14, 2018, the trial court's only conclusion at the hearing was that Pearman was a proper party to the suit. Instead, the trial court bifurcated the issues, and held an evidentiary hearing on them separately. There was some confusion, in fact, about whether the second hearing on Pearman's counterclaim was on the motion to dismiss or an evidentiary hearing. There, counsel for Szakaly stated, "Well, I am a little surprised we'd take evidence. It didn't seem to me the motion that's before the Court would be one that the Court order would take evidence on." Tr. p. 96. In other words, it appeared that counsel for Szakaly believed the evidentiary hearing to actually be a hearing on the motion to dismiss.

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Still, whether a motion to dismiss with attachments is converted to a motion for summary judgment is within the discretion of the trial court because the trial court has the opportunity to exclude the attachments. *See ARC Const. Management, LLC v. Zelenak,* 962 N.E.2d 692, 696 (Ind. Ct. App. 2012) ("Along with the motion to dismiss, ARC filed a memorandum and exhibits, which were not excluded by the trial court. . . . We therefore employ the summary judgment standard of review.").

[28] Our review of the CCS shows that, after Szakaly's November 22, 2017 motion to dismiss filing, the trial court set the motion to dismiss for a hearing on February 15, 2018. Pearman filed his motion for default on December 6, 2017. The trial court ended the February 2018, hearing by indicating that the rest of the issues would be taken up at a "full blown hearing" in May. Tr. p. 31. Regardless, Pearman's motion for default was filed before the hearing on the motion to dismiss.

[29] Indiana Trial Rule 6(C) states:

> A responsive pleading required under these rules, shall be served within twenty [20] days after service of the prior pleading. . . . The service of a motion permitted under Rule 12 alters the time

for service of responsive pleadings as follows, unless a different time is fixed by the court:

> (1) if the court does not grant the motion, the responsive pleading shall be served in ten [10] days after notice of the court's action;

> (2) if the court grants the motion and the corrective action is allowed to be taken, it shall be taken within ten [10] days, and the responsive pleading shall be served within ten [10] days thereafter.

[30] When Pearman filed his motion for default judgment, the trial court had not yet ruled on Szakaly's motion to dismiss. Accordingly, Szakaly's answer was not yet due, making Pearman's motion not yet ripe. A responsive pleading, in the form of a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6), was still pending. *See Morton-Finney,* 646 N.E.2d at 1388. We disagree with Pearman that he was entitled to default judgment, especially in light of Indiana's disfavor towards default judgment. *See, e.g., Allstate Ins. Co.,* 747 N.E.2d at 547. The trial court did not abuse its discretion in denying Pearman's motion for default judgment.

### ii. *Requests for admissions*

[31] Second, Pearman contends that it was error for the trial court to fail to admit Pearman's requests for admissions, because Szakaly never responded to the requests. At issue are two separate requests for admissions: one served August 28, 2017, and the other served December 12, 2017. We understand Pearman's argument to be that both were unanswered.

[32] At the evidentiary hearing on the malpractice issue, the parties disputed whether Szakaly responded to the requests for admissions. In fact, the trial court declined to admit the requests for admissions because "there [was] a question of fact whether they have been responded to . . .." Tr. p. 127.

[33] Trial Rule 36 states, with regard to requests for admissions:

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within a period designated in the request, not less than thirty [30] days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or his attorney.

It is generally understood that "[u]nder T.R. 36, the failure to respond in a timely manner to a request for admissions causes those matters to be admitted and conclusively established by operation of law." *Larson v. Karagan,* 979 N.E.2d 655, 660 (Ind. Ct. App. 2012). Therefore, we agree that Pearman would not need to petition the trial court in order to have unanswered requests for admissions deemed admitted. However, that does not necessarily preclude Pearman from having to establish that they were not answered. Pearman does produce evidence that Szakaly's counsel at the time received the requests; however, other than Pearman's contentions, we have no evidence that they were unanswered.

At the hearing, Szakaly and Pearman argued about whether Szakaly had sent Pearman the answers to the requests. Szakaly claims that he sent his responses to the requests for admissions to his attorney at the time, Murielle Bright, and that Szakaly was unclear why Pearman would not have received the responses. The trial court was in the best position to make this determination whether to deem the requests for admissions admitted. We cannot say for certain Szakaly did not respond to the requests for admission, and Pearman did not present any evidence to the contrary, other than his own argument to the trial court. The trial court ultimately denied Pearman's requests for admissions as admitted because there was a question as to whether there was a response in the first instance. We cannot conclude that the trial court erred in failing to admit the requests for admissions.

### iii. *Judicial estoppel*

Finally, Pearman argues that the principle of judicial estoppel should bar Szakaly's inconsistent arguments with regard to when his representation of Norris ended. Specifically, Pearman argues that, at the beginning of the proceedings, Szakaly stated he was never terminated, whereas later in the proceedings, Szakaly argued that he was terminated as an attorney in August 2014.

> Judicial estoppel is a judicially created doctrine that seeks to prevent a litigant from asserting a position that is inconsistent with one asserted in the same or a previous proceeding. Judicial estoppel is not intended to eliminate all inconsistencies; rather, it is designed to prevent litigants from playing 'fast and loose' with

the courts. The primary purpose of judicial estoppel is not to protect litigants but to protect the integrity of the judiciary. The basic principle of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation. Judicial estoppel only applies to intentional misrepresentation, so the dispositive issue supporting the application of judicial estoppel is the bad-faith intent of the litigant subject to estoppel.

*Price v. Kuchaes,* 950 N.E.2d 1218, 1227-28 (Ind. Ct. App. 2011) (citations omitted), *trans. denied.*

[37] Pearman does not specifically argue how Szakaly's inconsistent arguments were prejudicial to him. Instead, Pearman asserts that the trial court "found that Szakaly had no involvement in the Coordinated Health matter after August 2, 2014. There is simply no support for such finding, and so the Order is error."[13] Appellant's Br. p. 46. Even if it was error for the trial court to either (1) allow Szakaly's inconsistent positions; or (2) find that Szakaly had no involvement after August 2, 2014, we find any error to be harmless.

[38] Pearman was unsuccessful on his malpractice claim against Szakaly because "Pearman presented no evidence as to malpractice on the part of Andrew Alexander Szakaly or damages sustained." Appellee's App. Vol. II p. 6. We fail to see how allowing Szakaly to change his position regarding his

---

[13] The trial court's finding actually stated, "Because Szakaly's employment by Norris ended on August 2, 2014[,] his right to a contingency fee was extinguished at that point." Appellee's App. Vol. II p. 3.

termination date harmed Pearman as Pearman was still unable to prove legal malpractice or damages. Accordingly, even if it was error for the trial court to allow Szakaly to take contradictory positions under the doctrine of judicial estoppel, any error was harmless to Pearman.

## Conclusion

[39] The trial court did not err in finding Szakaly was entitled to an attorney lien. The trial court also did not err in granting judgment in favor of Szakaly on the issue of legal malpractice. Accordingly, we affirm.

[40] Affirmed.

Baker, J., and May, J., concur.